**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 10 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

_____

NATIONAL LABOR RELATIONS
BOARD,

    Petitioner,

v.

OKLAHOMA INSTALLATION
COMPANY,

    Respondent.

No. 98-9524

_____

### ON PETITION TO ENFORCE ORDER OF THE
### NATIONAL LABOR RELATIONS BOARD
### (Case No. 17-CA-18500)

_____

Robert J. Englehart, Attorney (David A. Fleischer, Senior Attorney; Frederick L. Feinstein, Acting General Counsel; Linda Sher, Associate General Counsel; and John D. Burgoyne, Acting Deputy Associate General Counsel, on the brief), National Labor Relations Board, Washington, D.C., for Petitioner.

Stephen L. Andrew (D. Kevin Ikenberry with him on the briefs) of Stephen L. Andrew & Associates, Tulsa, Oklahoma, for Respondent.

_____

Before **HENRY, McKAY,** and **ANDERSON,** Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

The National Labor Relations Board petitions for enforcement of the Decision and Order it issued to Respondent Oklahoma Installation Company [Company] on May 14, 1998, finding that the Company recognized the United Brotherhood of Carpenters & Joiners Local Union No. 943 [Union] as a 9(a) representative and "therefore had a continuing obligation to recognize and bargain with the Union, and to adhere to the terms of the parties' expired contract." Oklahoma Installation Co., 325 N.L.R.B. 741, 741 (1998). The Board ruled that the Company violated § 8(a)(1) and (5) of the National Labor Relations Act [NLRA or Act]. See id. at 742. We exercise jurisdiction under 29 U.S.C. § 160(e).

## I.

Oklahoma Installation Company is a construction industry employer engaged in commercial remodeling and the installation of retail store fixtures. On February 26, 1993, the Company signed a Recognition Agreement and Letter of Assent with the Union.[1] See R., Vol. II, Resp't Ex. 21. By executing this

---

[1]The Recognition Agreement was the product of a settlement between the Union and two companies, Oklahoma Installation Company and Oklahoma Fixture Company. In 1992, after a Board-conducted election, the Union was certified as the 9(a) representative of a unit of Oklahoma Fixture's employees. Subsequently, the Union filed charges against the two companies alleging that they were alter egos or a single employer. Before that matter came to trial in 1993, Oklahoma

(continued...)

Recognition Agreement, the Company agreed to be bound to a collective bargaining agreement between the Union and the Oklahoma Fixture Company, until the Company terminated the Recognition Agreement "by giving written notice to the Union . . . at least 150 days prior to the then-current anniversary date of the [above referenced] collective bargaining agreement." Id. at 2. The Recognition Agreement also included a clause stating, "The Union has submitted, and the Employer is satisfied that the Union represents a majority of its employees in a unit that is appropriate for collective bargaining." Id. at 1. The Company had no employees working within the Union's jurisdiction when it entered into this agreement in February 1993. See R., Vol. III, Doc. 1 at 2.

The parties performed according to the Recognition Agreement and the underlying collective bargaining agreement until the collective bargaining agreement expired on May 31, 1995. Two months later, in August 1995, the Company began work on a project within the Union's jurisdiction but did not employ carpenters through the Union's hiring hall. Instead, the Company paid its carpenters wages lower than the contract rate and stopped making payments to the Union's fringe benefits funds. In response to the Company's actions, the Union filed unfair labor practice charges and the Board issued a complaint against the

[1](...continued)
Installation agreed to execute the Recognition Agreement, which settled the parties' dispute. See R., Vol. III, Doc. 1 at 2.

Company, alleging that it had failed to maintain the terms and conditions of employment set forth in the expired agreement between the Union and the Oklahoma Fixture Company and failed and refused to bargain with and recognize the Union in violation of § 8(a)(1) and (5) of the Act. The Company denied the allegations.

The matter was heard before an administrative law judge who determined that the relationship between the Company and the Union was governed by § 8(f) of the Act, not § 9(a), because "no election [was] won by the Union among Respondent's employees and [there was] no showing of majority support for the Union among [the same] employees." Id. at 5. The judge further concluded that because the underlying collective bargaining agreement had expired the Company was free to repudiate the 8(f) relationship and withdraw recognition from the Union, as it did. See id.

A divided Board rejected the conclusions of the administrative law judge. Chairman Gould and Member Fox held that the language of the Recognition Agreement sufficiently demonstrated that the Company recognized the Union as the exclusive representative of the Company's employees under § 9(a). See Oklahoma Installation, 325 N.L.R.B. at 741-42. Therefore, the majority concluded, the Company's withdrawal from the Union, its refusal to bargain with the Union, and its unilateral actions changing the terms and conditions of

-4-

employment violated § 8(a)(1) and (5) of the Act. See id. at 742.

Member Hurtgen, however, dissented and would have dismissed the complaint because he did not agree that the Union was a 9(a) representative of the Company's employees. Relying on the fact that "there was no contemporaneous showing of majority support . . . [and that] the language of the contract [did] not clearly state that there was such a showing," id. at 744, Member Hurtgen concluded that the Recognition Agreement did not unambiguously indicate that the employer extended § 9(a) recognition to the Union. See id. Because the persons who might attack § 9(a) recognition "were not on clear notice that a Section 9 relationship was intended," id., he also concluded that § 10(b) of the Act, which applies a six-month bar to attacks on majority status, did not apply in this case.

In reviewing the Board's decision, we are guided by the substantial evidence standard. According to § 10(e) of the Act, 29 U.S.C. § 160(e), the Board's findings of fact should be upheld if they are supported by substantial evidence in the record as a whole. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); NLRB v. American Can Co., 658 F.2d 746, 753 (10th Cir. 1981). "If the Board adopts a rule that is rational and consistent with the Act, then the rule is entitled to deference from the courts." Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 42 (1987) (citation omitted); see, e.g.,

NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 786-87 (1990).

However, the Board's interpretation of contract language is not entitled to any

deference. See Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 202-03 (1991).

## II.

The issues in this case are identical to those raised in a companion case,

NLRB v. Triple C Maintenance, Inc., __ F.3d __ (10th Cir. 2000). They are

(1) whether the relationship between the union and the employer was governed by

§ 8(f) or § 9(a) of the Act, and (2) whether § 10(b) precludes the employer from

attacking the formation of a 9(a) relationship. In Triple C Maintenance, we

decided that the correct approach to answering these questions would be as

follows: First, "because the party asserting the existence of a 9(a) relationship

has the burden to prove its existence," we must "examine whether the bargaining

agreement, on its face, demonstrates that the parties intended to form a 9(a)

relationship as opposed to one governed by § 8(f)." Id., Op. at 6. Only when we

determine that the agreement unambiguously shows that

> a 9(a) relationship was intended, which means that the parties had
> sufficient notice that § 9(a) governs their agreement, [do] we
> examine whether a challenge to the 9(a) status, and its presumption
> of majority support, is reasonably restricted by a period of limitations
> under § 10(b) or otherwise.

Id. at 7. Conversely, if we determine that the parties did not have clear notice

that a 9(a) relationship was intended, then the presumption in favor of § 8(f) was never rebutted and it is not necessary to consider the applicability of a time bar.

Board precedent mandates that the party asserting the existence of a 9(a) relationship has the burden to prove it because a contract formed between a union and a construction industry employer is presumed to be governed by § 8(f). See Casale Indus., Inc., 311 N.L.R.B. 951, 952 (1993); John Deklewa & Sons, Inc., 282 N.L.R.B. 1375, 1385 n.41 (1987), enforced sub nom. International Ass'n of Bridge, Structural & Ornamental Iron Workers v. NLRB, 843 F.2d 770 (3d Cir. 1988). This burden may be met in two ways. The party either may conduct a Board-certified election or it may obtain the employer's voluntary recognition of the union as the employees' exclusive majority bargaining agent. See Deklewa, 282 N.L.R.B. at 1387 n.53; accord NLRB v. Goodless Elec. Co., 124 F.3d 322, 328 (1st Cir. 1997). When attempting to prove a 9(a) relationship through the latter method, a party must show three things: (1) the union's unequivocal demand for recognition as a 9(a) representative; (2) the employer's unequivocal and voluntary grant of such recognition; and (3) a contemporaneous showing of majority support. See Goodless Elec. Co., 321 N.L.R.B. 64, 65-66 (1996); rev'd on other grounds, 124 F.3d at 328; Golden West Elec., 307 N.L.R.B. 1494, 1495 (1992); J & R Tile, Inc., 291 N.L.R.B. 1034, 1036 & n.11 (1988).

In Triple C Maintenance, Op. at 15, we decided that the third element

requiring a contemporaneous showing of majority support may be satisfied by language in a bargaining agreement where that language "unequivocally demonstrates that the parties intended to be governed by § 9(a)." We held that the contractual language met this standard by showing that the Union wanted to be recognized as a 9(a) representative, reciting that the employer "'recognize[s] [the Union] as the sole and exclusive agent for . . . a unit [of employees] appropriate for bargaining within the meaning of Section 9(a),'" and stating that the employer's recognition is based on its acknowledgment or acceptance of some proof or "'clear showing of majority support.'" Id., Op. at 15 (citation omitted). In short, the language of the recognition clause itself was evidence that a 9(a) relationship was contemplated by the parties and that a showing of majority proof had been actually made or offered. As a result, we ruled that the contract language was sufficient to satisfy the requirement of a contemporaneous showing of majority support and therefore establish a 9(a) relationship. See id., Op. at 17.

The critical question, then, is whether the Recognition Agreement in this case unequivocally and unambiguously illustrates that the parties intended to be governed by § 9(a) rather than by § 8(f). The Recognition Agreement contained one paragraph stating that "[t]he Union has submitted, and the Employer is satisfied that the Union represents a majority of its employees in a unit that is appropriate for collective bargaining." R., Vol. II, Resp't Ex. 21 at 1. The

Recognition Agreement also states, "The Employer recognizes the Union as the exclusive collective bargaining agent for its employees who perform carpentry and construction work within the jurisdiction of the Union on all present and future job sites."  Id.  Unlike the contractual language in Triple C Maintenance, the language here falls short of the requisite standard–it does not "'conclusively give[] notice that a 9(a) relationship is intended'" for several reasons.  Triple C Maintenance, Op. at 16 (quoting Sheet Metal Workers' Internat'l Ass'n Local 19 v. Herre Bros., Inc., 201 F.3d 231, 242 (3d Cir. 1999)).

First, although the document at issue is titled "Recognition Agreement and Letter of Assent," nowhere does it state that the Company extends recognition to the Union as a 9(a) representative.  It is not sufficient to state that an employer "recognizes" a union as an exclusive collective bargaining agent without other language showing that the recognition is based on § 9(a).  The collective bargaining agreements that have been found to establish a 9(a) relationship by the terms of their language have all utilized language which, beyond merely reciting key words such as "recognize" and "acknowledge and confirm," conclusively shows that the recognition was based on § 9(a).  See, e.g., id., Op. at 15 ("[The employer] 'recognize[s] [the Union] as the sole and exclusive bargaining agent . . . pursuant to Section 9(a) . . . .'" (citation omitted)); Sheet Metal Workers', 201 F.3d at 242 (concluding that contract language establishes a 9(a)

relationship in part because language states that "'the Employer recognizes the Union as the exclusive Collective Bargaining Unit . . . unless and until such time as the Union loses its status as the employees exclusive representative as a result of an N.L.R.B. election requested by the employees'" and because union's presumed majority status coupled with employee-requested election is part of structure of § 9(a) agreements (citation omitted)); MFP Fire Protection, Inc., 318 N.L.R.B. 840, 841 (1995) ("The Employer therefore unconditionally acknowledges and confirms that [the Union] is the exclusive bargaining representative . . . pursuant to Section 9(a) of the [Act]."), enforced on other grounds, 101 F.3d 1341, 1343 (10th Cir. 1996);  Decorative Floors, Inc., 315 N.L.R.B. 188, 188 (1994) ("[T]he Employer recognizes, pursuant to Section [9(a)] . . . , the Union as the sole and exclusive bargaining representative . . . ."); Triple A Fire Protection, Inc., 312 N.L.R.B. 1088, 1088 (1993) ("The Employer therefore unconditionally acknowledges and confirms that [the Union] is the exclusive bargaining representative . . . pursuant to Section 9(a) of the [Act]."), enforced 136 F.3d 727 (11th Cir. 1998), cert. denied, 525 U.S. 1067 (1999); cf. J & R Tile, 291 N.L.R.B. at 1037 (determining that relationship was not governed by § 9(a) primarily because there was no evidence that the union sought and the employer granted recognition as a 9(a) representative).  The Recognition Agreement in this case does not show either by reference to § 9(a) or by other

language that the Company unequivocally granted § 9(a) recognition to the Union.

While we acknowledge that the differences between this case and <u>Triple C</u> <u>Maintenance</u> are narrow, one of the patent differences is that the recognition clause in <u>Triple C Maintenance</u> utilized precise language, including reference to § 9(a), to demonstrate unequivocally that governance by § 9(a) was intended. <u>See</u> <u>Triple C Maintenance</u>, Op. at 16. Though the lack of a specific reference to § 9(a) is not fatal if the rest of the agreement conclusively notifies the parties that a 9(a) relationship is intended, <u>see</u> <u>id.</u>, Op. at 16 n.3, in this case the absence of any reference to § 9(a) compounds the ambiguity of the recognition clause. Its absence indeed illustrates the jeopardy in which the proponent of the 9(a) relationship (i.e., the Union in this case) places itself, and we cannot ascertain from the face of the agreement precisely what the parties intended.

Also in contrast to the language in <u>Triple C Maintenance</u>, the agreement here does not recite that the Union submitted proof of majority status or that the employer acknowledged the proof of majority support as the basis for its § 9(a) recognition of the Union. <u>See</u> <u>id.</u>, Op. at 15 (referring to language where the employer "'agree[d] that [its] recognition is predicated on a clear showing of majority support for [the Union] indicated by [the] bargaining unit employees'" (citation omitted)); <u>see also</u> <u>Sheet Metal Workers'</u>, 201 F.3d at 242 (relying on language stating that "'the Union has submitted proof and the Employer is

satisfied that the Union represents a majority of its employees'" (citation omitted)); <u>Decorative Floors</u>, 315 N.L.R.B. at 188 (finding a 9(a) relationship from language stating that the union offered to show the employer its employees' authorization cards and that the employer was satisfied that the union represented a majority of its employees within the meaning of § 9(a)). The requirement of a contemporaneous showing of majority support is not satisfied by the contractual language in the Recognition Agreement.

Finally, the Board appears to argue that the use of the word "submitted" means that the Union in fact submitted proof of majority support. Another logical reading of that word within the sentence in which it was used is simply that the Union *asserted* that it represents a majority of the employer's employees. Thus, the use of the word "submitted" is not determinative but, to the contrary, demonstrates another measure of the ambiguity of the language in the Recognition Agreement. In fact, because § 8(f) agreements may also contain language indicating that a union exclusively represents a majority of the employees, <u>see</u> <u>J & R Tile</u>, 291 N.L.R.B. at 1036 & n.11, it is impossible to tell from the face of the Recognition Agreement whether the parties intended to apply § 8(f) or § 9(a). <u>Cf.</u> <u>American Automatic Sprinkler Sys., Inc. v. NLRB</u>, 163 F.3d 209, 222 (4th Cir. 1998) (warning that if the Board or a court were to credit § 9(a) recognition absent a contemporaneous showing or a description of a contemporaneous

-12-

showing of majority support, voluntary recognition would be reduced "to a hollow form"), cert. denied, __ U.S. __ , 120 S. Ct. 65 (1999).

We conclude that the majority Board's construction of the language in the Recognition Agreement, which is entitled to no deference, is not supported by the substantial evidence in the record as a whole and is therefore erroneous. Because it is not evident from the face of the Recognition Agreement that the Company satisfied the requirements of voluntary § 9(a) recognition of the Union, the presumption in favor of § 8(f) was not rebutted.[2] Accordingly, we hold that the relationship between the Company and the Union was governed by § 8(f). The Company therefore permissibly repudiated the relationship after the underlying contract expired on May 31, 1995. As a result of our determination that the contractual language in this case was not sufficient to rebut the presumption of an 8(f) relationship and establish a 9(a) relationship, we do not address whether § 10(b) or a similar period of limitations bars an employer from defending itself against the Union's claim of a 9(a) relationship.[3] This case makes clear that a union cannot claim that a 9(a) relationship was formed and rely on § 9(a)'s presumption of majority status if the purported recognition language does not

---

[2]We note that, contrary to Member Hurtgen's analysis, it is not necessary or proper to examine the facts at the time the parties entered into the Recognition Agreement. It is sufficient that the Union did not overcome the 8(f) presumption.

[3]For our resolution of this issue in a companion case, see our recent decision in Triple C Maintenance, Op. at 23-26.

satisfy the three requirements of voluntary recognition and thereby give the employer clear and unambiguous notice of the nature of its relationship with the union.

We deny the Board's petition for enforcement of its order, and we reverse and remand for a remedial order consistent with this opinion.

**DENIED, REVERSED AND REMANDED**.