**NEWS/SUN SENTINEL
COMPANY, Petitioner,**

v.

**NATIONAL LABOR
RELATIONS BOARD.**

**Miami Typographical Union No.
430, Intervenor.**

No. 88–1815.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 19, 1989.
Decided Nov. 17, 1989.

Bonnie Glatzer, New York City, for petitioner. Ronald A. Lindsay, Washington, D.C., also entered an appearance for petitioner.

Joseph H. Bornong, Attorney, N.L.R.B., with whom Paul J. Spielberg, Deputy Asst. General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., were on the brief for respondent.

Richard Rosenblatt for intervenor.

Before: WALD, Chief Judge, RUTH B. GINSBURG, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH B. GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This refusal-to-bargain case arose out of a merger between two locals of the International Typographical Union (ITU). In late 1985, the composing room employees of the News/Sun Sentinel Company (the Company) elected by a vote of 115 to 32 to merge the collective bargaining unit that had represented them for over 30 years, Local 895, into Local 430, after negotiations for a new agreement with the Company had reached an impasse.[1] The Company denied Local 430's subsequent request for bargaining, contending that Local 430 did not truly represent the composing room employees. Following the election and the refusal to bargain, a Company employee filed a petition to decertify Local 430. Local 430 lodged unfair labor practice charges with the National Labor Relations Board (NLRB or Board); the charges were initially rejected but were sustained on appeal. The NLRB's Regional Director then issued a complaint charging that the Company had violated the National Labor Relations Act (NLRA), 29 U.S.C. §§ 158(a)(1) and (5), by its refusal to bargain.[2]

After a hearing, an Administrative Law Judge (ALJ) concluded that Local 430 was entitled to succeed to Local 895's collective bargaining status and that the Company's refusal to bargain constituted an unfair labor practice; the ALJ therefore ordered the Company to bargain with Local 430. *News/Sun-Sentinel Co.*, No. 12–CA–11916, Memorandum Decision (Mar. 11, 1988) (ALJ Decision). The NLRB affirmed the ALJ's decision. *News/Sun-Sentinel Co.*, 290 N.L.R.B. No. 156 (Sept. 21, 1988). The Company petitioned the NLRB to reconsider its ruling or remand the case, contending that in light of the decertification petition, Local 430 should not be accorded representation rights absent a Board-conducted election. The NLRB denied the Company's request. *News/Sun-Sentinel Co.*, No. 12–CA–11916, Order Denying Motion (Nov. 17, 1988). The Company then petitioned this court for review of the bargaining order and the order denying recon-

---

**1.** Two months before the merger election, Local 895 asked the ITU to appoint a trustee to take over the day-to-day operation of the unit, due to the local's difficulty in attracting new leadership. Local 895's officers remained at their posts in an acting capacity to assist the ITU-appointed trustee.

**2.** The NLRA provides in pertinent part:

It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in [the Act];
. . . .
(5) to refuse to bargain collectively with the representatives of his employees. . . .
29 U.S.C. § 158(a).

sideration; the NLRB cross-applied for enforcement of the bargaining order. Local 430 intervened in the dispute in support of both NLRB orders. We deny the Company's petition and grant the Board's application.

## I. CONTOURS OF THE CONTROVERSY

Traditionally, the NLRB has used two criteria to determine whether organizational changes such as mergers and affiliations affect the collective bargaining status of unions:

[The first] is a test for "continuity of representation," by which the Board seeks to determine whether replacement by the successor union disrupts the bargaining relationship established by its predecessor. Second, the Board requires ... that the election procedure be conducted in accordance with minimal standards of "due process," so that the outcome accurately reflects the employees' true desires.

Note, *Union Affiliations and Collective Bargaining,* 128 U.Pa.L.Rev. 430, 433 (1979). When these standards are not met, the Board will invalidate the union election and will itself supervise a new election.[3] The Company contends that the Board erred in finding that both the continuity and the due process standards were met in this case. The intervening union, while endorsing the NLRB's findings, challenges the Board's authority to invalidate a merger election on due process grounds.

## II. CONTINUITY OF REPRESENTATION

█ The Supreme Court has stated that "[t]he industrial stability sought by the [NLRA] would unnecessarily be disrupted if every union organizational adjustment were to result in displacement of the employer-bargaining representative relationship.' " *NLRB v. Financial Inst. Employees, Local 1182,* 475 U.S. 192, 202–03, 106 S.Ct. 1007, 1012–13, 89 L.Ed.2d 151 (1986) (*Seattle–First*) (quoting *Canton Sign Co.,* 174 N.L.R.B. 906, 909 (1969)). The Company, as the party seeking such displacement,

has the burden of proving its claim of discontinuity. *See Insulfab Plastics, Inc.,* 274 N.L.R.B. 817, 821 (1985), *enforced sub nom. NLRB v. Insulfab Plastics, Inc.,* 789 F.2d 961 (1st Cir.1986). The Board's findings of fact regarding changes resulting from union reorganizations are conclusive if supported by substantial evidence on the record as a whole. *See Insulfab Plastics,* 789 F.2d at 966.

█ The Company contends that the Board erred in adopting the ALJ's finding of continuity between Locals 895 and 430. The Company first argues that Local 895 was defunct at the time of the merger, and therefore was incapable of shifting its representational rights to another local. However, "[a] bargaining representative is considered defunct ... only if it is unable or unwilling to represent the employees." *Yates Indus., Inc.,* 264 N.L.R.B. 1237, 1249 (1982). Here, substantial evidence supported the determination that "the Union sought the trusteeship and the merger in order to bring fresh leadership to the Union and to eliminate the impasse in contractual negotiations and work for a new contract." ALJ Decision at 12. Furthermore, the Company failed to question the vitality of Local 895 until after the merger election; the delay in asserting defunctness substantially weakens the plea.

█ The Company has similarly failed to sustain its burden of proving discontinuity of representation. In assessing continuity, the NLRB does not run down a checklist of "certain cited criteria"; instead, the Board considers "the totality of a situation." *Yates Indus.,* 264 N.L.R.B. at 1250. Continuity is evidenced by the maintenance of traces of a preexisting identity and the retention of autonomy over the day-to-day administration of bargaining agreements. Accordingly, a question concerning representation has been found to exist when "[a] change would result in the complete loss of the identity of the certified union and in the substitution of a new and different union as representative of the employees in the

---

**3.** The Board must administer an election whenever it finds that a "question of representation" exists that affects the status of a certified union. *See* 29 U.S.C. § 159(c).

certified unit." *The Gas Serv. Co.*, 213 N.L.R.B. 932, 933 (1974); *see also Gulf Oil Corp.*, 135 N.L.R.B. 184 (1962).

 No such loss of identity occurred here. In contrast, as counsel for the Company conceded at oral argument, the structure of the "chapel," or collective bargaining unit, composed of Company employees remained essentially unchanged after the merger. Of principal importance, the chapel retained primary responsibility for processing grievances, administering collective bargaining agreements, and ratifying contracts with the Company.

 The Company contends that because the local has veto power over contracts ratified by the chapel, and because the former membership of Local 895 comprises only half the membership of Local 430, the merger impermissibly curtailed the employees' autonomy. Contrary to the Company's suggestion, however, a question concerning representation is not automatically generated whenever a relatively small group merges into a larger one. If, as in this case, sufficient indicia of continuing autonomy are present, numerical disparities in voting strength will not force a finding of discontinuity. *See Montgomery Ward & Co.*, 188 N.L.R.B. 551, 552 (1971) (holding that merger of 500–member local into 11,-000–member sister local did not alter essential identity of bargaining representative). Furthermore, before the merger, contracts between the Company and Local 895 were already subject to veto by the ITU, *see* Constitution, Bylaws, General Laws and Convention Laws of the International Typographical Union, Art. VII, §§ 3–4 (1984); the merger, therefore, did not drastically reduce the actual autonomy of the Company's employees. In short, the Board was justified in finding that any administrative or organizational changes resulting from the merger were not "sufficiently dramatic to alter the union's identity." *Seattle–First*, 475 U.S. at 206, 106 S.Ct. at 1015.

## III. DUE PROCESS

 The Company next contends that procedural irregularities in the merger election violated minimum standards of due process. The record does not bear out this assertion. An announcement on the composing room bulletin board and two Local 895 meetings afforded the Company's employees adequate notice of the election and an opportunity to comment on it. As to the voting itself, union members were able to vote by mail; the record does not suggest that the mail-in vote, which totaled 74–29 in favor of the merger, was tainted.[4] Although the mail-in balloting did not conform to the standards adhered to in NLRB-conducted elections, those standards do not govern here. *See Seattle–First*, 475 U.S. at 204, 106 S.Ct. at 1013 ("While the Board is charged with responsibility to administer [its own statutory election] procedure, the [NLRA] gives the Board no authority to require unions to follow other procedures in adopting organizational changes."); *East Dayton Tool & Die Co.*, 190 N.L.R.B. 577, 579 (1971). Absent any evidence of irregularity, the mail-in balloting is a reliable indicator of majority sentiment.

 The Company's main challenges are directed at the conduct of the composing room balloting, which resulted in a vote of 41–3 in favor of the merger. The Company contends that the union failed to ensure that employees who voted in the composing room did not also vote by mail. Absent an affirmative showing of irregularity by the Company, however, the merger election must stand undisturbed. *See supra* note 4. The record contains evidence of only two instances in which votes were actually cast by employees in a manner different from the union's own accounts; this does not suffice to undermine the composing room election results.

The Company further asserts, as a reason to invalidate the election, the failure of union officials fully to secure the ballot box. Again, although NLRB election pro-

---

**4.** Contrary to the Company's suggestion, an employer challenging the validity of a merger election must provide an evidentiary showing of irregularity before the burden can shift to the NLRB General Counsel to provide affirmative proof of procedural propriety. *See Royal Coach Lines, Inc. v. NLRB*, 838 F.2d 47, 54 (2d Cir. 1988).

cedures require the ballot box to be tended at all times, federal labor law does not impose such precautions on internal union elections. *See Seattle–First*, 475 U.S. at 204, 106 S.Ct. at 1013. Although not a textbook example of meticulousness, the voting procedures followed in the composing room were not so lacking in safeguards as to cast substantial doubt on the election outcome. *Cf. The J.H. Day Co.*, 204 N.L.R.B. 863, 864 (1973) (invalidating election that approved affiliation by a 17–vote margin when "56 of the 134 ballots cast had no legend at the top, but contained only 'YES' and 'NO' boxes"). In sum, the Board properly concluded that "the election procedures [were] not . . . so 'lax' or 'substantially irregular' as to 'negate the validity of the election.'" *NLRB v. Newspapers, Inc.*, 515 F.2d 334, 339 (5th Cir.1975).[5]

## IV. DECERTIFICATION PETITION

■ Finally, the Company contends that the Board erred in failing to consider the decertification petition filed by a Company employee as evidence of employee dissatisfaction with the merger election. However, the decertification petition was not filed until two months after the disputed election. There is no indication that the petition stemmed from dissatisfaction with the election, and no further evidence of dissatisfaction in the record; nor does the record indicate how many employees joined in the petition.[6] The Company's refusal to bargain, moreover, intervened between the election and the petition, and thus could have influenced employee attitudes towards the union. *See Franks Bros. Co. v. NLRB*, 321 U.S. 702, 704, 64 S.Ct. 817, 818,

88 L.Ed. 1020 (1944) (unfair labor practices may discourage union membership). Absent further evidence of employee dissatisfaction associated with the merger election and separable from the effects of the Company's refusal to bargain, it was appropriate for the Board to disregard the decertification petition when assessing the effect of the merger on the union's collective bargaining status. *See NLRB v. Fall River Dyeing & Finishing Corp.*, 775 F.2d 425, 433 (1st Cir.1985), *aff'd*, 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987) (upholding ALJ's refusal to consider at unfair labor practice hearing decertification petitions filed after refusal to bargain because "no useful purpose is served by permitting the employer to defend the propriety of an earlier refusal to bargain by relying on subsequent events that had nothing to do with the refusal").

■ Finally, the Board properly ordered bargaining rather than a new election, given twin factors: (1) cause to doubt whether the petition accurately reflected employee dissatisfaction with the merger; and (2) the continuing hazard that the Company's refusal to bargain might influence the outcome of a second election. *Cf. St. Agnes Medical Center v. NLRB*, 871 F.2d 137, 147 (D.C.Cir.1989) (remanding bargaining order for examination of effect of employer's unfair labor practices on decertification election where decertification petition preceded unfair practices); *Peoples Gas System, Inc. v. NLRB*, 629 F.2d 35, 50 (D.C.Cir.1980) (ordering election rather than bargaining where loss of support for union had been clearly demonstrated in an election free from unfair labor practices).

---

**5.** The union asserts that the NLRB lacked authority even to engage in a due process inquiry. In *Seattle-First*, the Supreme Court held that the NLRB had exceeded its authority under the NLRA in invalidating an affiliation election solely because the union had not permitted nonmember employees to vote. The Court declined to address the union's further contention that "it may even be inappropriate for the Board to impose due process safeguards with respect to union members." *Seattle-First*, 475 U.S. at 199 n. 6, 106 S.Ct. at 1011 n. 6. Because the NLRB did not invalidate the merger election here on due process grounds, and because the Board's findings as to due process are supported by the

record, we save for another day and case the question left open by *Seattle-First*.

**6.** Even if, as the Company urges, the fact that the Board did not dismiss the petition suggests that it was supported by the requisite 30% showing of interest, *see* 29 U.S.C. § 159(e)(1), the petition would not warrant overturning the election results. *Cf. Allied Indus. Workers, Local 289 v. NLRB*, 476 F.2d 868, 881 (D.C.Cir.1973) ("The naked showing that a decertification petition has been filed, with no indication of the number of signatories . . . , is an insufficient basis in fact for refusing to bargain. . . .").

435

CONCLUSION

The NLRB's finding that Local 430 was entitled to succeed to the collective bargaining rights of Local 895 was supported by substantial evidence. The Company's petition for review is therefore denied, and the NLRB's motion to enforce its bargaining order is granted.

*It is so ordered.*