# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 24, 2008      Decided December 30, 2008

No. 07-1419

THE RAYMOND F. KRAVIS CENTER FOR THE PERFORMING
ARTS, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with 07-1459

On Petition for Review
and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

*Charles P. Roberts III* argued the cause for petitioner.
With him on the briefs were *Robert J. Janowitz* and *Kimberly
Seten*.

*David A. Seid*, Attorney, National Labor Relations Board,
argued the cause for respondent. With him on the brief were
*Ronald E. Meisburg*, General Counsel, *John H. Ferguson*,

Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Jill A. Griffin*, Attorney.

Before: ROGERS, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: This case arises out of a labor dispute between the Raymond F. Kravis Center for the Performing Arts in West Palm Beach, Florida, and Local 623 of the International Alliance of Theatrical Stage Employees and Moving Picture Technicians and Allied Crafts. Kravis and the union entered into collective bargaining agreements that established an exclusive hiring hall arrangement: Kravis would use only employees referred by Local 623 to perform all stagehand work at Kravis's Dreyfoos Hall. After the agreements expired, Kravis declared impasse during contract renegotiations, withdrew recognition from the union, and did not request further referrals from it.

The National Labor Relations Board ruled that Kravis violated §§ 8(a)(5) and (1) of the National Labor Relations Act by, among other things, unilaterally changing the scope of the bargaining unit and withdrawing recognition from Local 623. The Board also determined that, as a result of a union merger, Local 500 was the successor union to Local 623. It ordered Kravis to recognize and bargain with Local 500 as the exclusive representative of Kravis's stagehand employees. Kravis filed a petition for review in this Court. We deny the petition for review and grant the Board's cross-application for enforcement.

I

The Kravis Center for the Performing Arts is a concert hall and theater complex in West Palm Beach, Florida. In 1992, Kravis and Local 623 of the International Alliance of Theatrical Stage Employees and Moving Picture Technicians and Allied Crafts entered into a five-year collective bargaining agreement. The agreement provided for an exclusive hiring hall arrangement under which Local 623 would provide the stagehand employees at Kravis's concert venue, Dreyfoos Hall, as the need arose – specifically, carpenters, electricians, flymen and riggers, props, and wardrobe employees. In 1998, the parties renewed the contract for two more years, effective until June 2000.

In April 2000, Kravis notified Local 623 of its intent to terminate the 1998 agreement upon its expiration. The parties negotiated from May to September 2000. After various proposals were bandied back and forth, Kravis submitted its final bargaining proposal on September 9, 2000. The proposal included discretionary use of Local 623 referrals, an unfettered right to subcontract stagehand work, and contract terms that would apply only to Local 623-referred workers, not to other stagehand workers at Dreyfoos Hall.

On September 11, 2000, Kravis declared impasse and unilaterally implemented its final proposal. On September 24, 2000, Kravis withdrew recognition from Local 623, and thereafter requested no further referrals from Local 623 for stagehand employees at Dreyfoos Hall.

In March 2001, Local 623 filed unfair labor practice charges. After an investigation, the NLRB's General Counsel filed a complaint.

Meanwhile, in February 2002, Local 623 merged with five other local theater-employee unions in south Florida to form a new Local 500. Local 623 members did not vote on the union merger.

After a hearing on the General Counsel's complaint, an administrative law judge found that Kravis violated §§ 8(a)(5) and 8(a)(1) of the National Labor Relations Act by, among other things, unilaterally changing the scope of the bargaining unit to exclude non-referred stagehands and by withdrawing recognition from Local 623. However, the ALJ concluded that Local 623 ceased to exist as a result of the 2002 merger that formed Local 500 and that Kravis's bargaining obligation had ended on that date. All parties filed exceptions.

The Board affirmed the finding that Kravis violated §§ 8(a)(5) and 8(a)(1). It reasoned that the parties' relationship, based on the agreements in effect since 1992, constituted a § 9(a) collective bargaining relationship, rendering unlawful Kravis's unilateral change to the bargaining unit and withdrawal of recognition from the union. The Board also rejected the ALJ's determination that the 2002 union merger terminated Kravis's bargaining obligation. Overruling its traditional due process requirement for union mergers in response to the Supreme Court's decision in *NLRB v. Financial Institution Employees of America, Local 1182* (*Seattle-First*), 475 U.S. 192 (1986), the Board concluded that Local 500 was the successor to Local 623 notwithstanding the absence of a vote by Local 623 members. Accordingly, the Board ordered Kravis to recognize and bargain with Local 500 as the representative of its stagehand employees.

Kravis has petitioned for review, and the Board has filed a cross-application for enforcement. We review the Board's

decision to determine whether its factual findings are supported by substantial evidence and whether the Board otherwise acted arbitrarily and capriciously. *See Beverly Health & Rehab. Servs., Inc. v. NLRB*, 317 F.3d 316, 320 (D.C. Cir. 2003).

II

Kravis has raised a variety of arguments to justify its decision to stop using referrals from Local 623 after termination of the collective bargaining agreement in 2000.

To analyze Kravis's arguments, we first review the statutory background. Section 8(a)(5) of the National Labor Relations Act makes it "an unfair labor practice for an employer . . . to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). Section 9(a) defines the term "representatives": "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159(a).

A union can achieve the status of a majority collective bargaining representative through either Board certification or voluntary recognition by the employer – in a contract, for example. *See Exxel/Atmos, Inc. v. NLRB*, 28 F.3d 1243, 1247 (D.C. Cir. 1994). Under Board precedent, a union with § 9(a) status enjoys numerous benefits, including "a conclusive presumption of majority status during the term of any collective-bargaining agreement, up to three years." *Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 786 (1996). This

conclusive presumption is "based not so much on an absolute certainty that the union's majority status will not erode," as on the need to achieve "stability in collective-bargaining relationships" and allow the union to focus on obtaining and administering an agreement. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 38 (1987) (quoting *Terrell Machine Co.*, 173 NLRB 1480, 1480 (1969)). After the agreement expires or after three years (if the agreement is for more than three years), a union with § 9(a) status enjoys a rebuttable presumption of continuing majority support. The employer can rebut the presumption by presenting evidence that the union no longer possesses majority support. *See Levitz Furniture Co.*, 333 NLRB 717, 723 (2001); *cf. Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 361 (1998).

When a collective bargaining agreement expires, an employer is ordinarily obligated to continue bargaining with the union, absent a showing that the union no longer has majority support. *See Auciello*, 517 U.S. at 786-87. Even if negotiations reach impasse, moreover, an employer cannot unilaterally change the scope of the bargaining unit. *See Boise Cascade Corp. v. NLRB*, 860 F.2d 471, 474-75 (D.C. Cir. 1988).

A

In this Court, Kravis argues that Local 623 was not a § 9(a) union because it was not the exclusive representative of stagehand employees at Kravis's Dreyfoos Hall. If this were correct, Kravis would have had no obligation after 2000 to bargain with Local 623 regarding employment at Dreyfoos Hall. But Kravis's contention flouts the plain language of the 1992 and 1998 collective bargaining agreements. In both contracts, Article I's jurisdiction clause and Article II clearly

provided that Kravis would *exclusively* use Local 623 referrals as stagehand workers at Dreyfoos Hall. Article I defined the union's work jurisdiction as "All carpentry, electrical, sewing, fitting, and related work performed on or in connection with the sets and props, costumes and wardrobe used in the Theater." Article II provided that the Kravis Center "agrees that the work described in ARTICLE I above shall be performed by qualified workers referred by the Union." Both contracts thus explicitly stipulated that all Dreyfoos Hall stagehands within the prescribed categories were to be referred by Local 623 – and would be subject to the terms and conditions negotiated by Kravis and Local 623 in the collective bargaining agreement. *See Strand Theatre of Shreveport Corp. v. NLRB*, 493 F.3d 515, 519-20 (5th Cir. 2007) (finding a § 9(a) collective bargaining agreement based on exclusive language in the contract). To be sure, this case involves a hiring hall referral arrangement, not the typical situation where an employer hires its employees directly. But for Dreyfoos Hall stagehand workers, the hiring hall was exclusive, and the Board reasonably equated Local 623 to a traditional union representing a bargaining unit of employees.

Kravis also cites NLRA § 8(f), which provides an exception for employers in the construction industry to the usual rule requiring continued bargaining at the end of a contract. 29 U.S.C. § 158(f). But § 8(f) is a narrow statutory exception carved out for employers in the construction industry only. *See M & M Backhoe Serv., Inc. v. NLRB*, 469 F.3d 1047, 1048 (D.C. Cir. 2006) (describing the § 8(f) exception as "specific to the construction industry"); *Nova Plumbing, Inc. v. NLRB*, 330 F.3d 531, 534 (D.C. Cir. 2003) (describing § 8(f) as "a limited exception" due to "the unique nature of the [construction] industry"); *Strand Theatre*, 493 F.3d at 520 ("[E]xcept in the construction industry, a Union is entitled to a presumption of majority support . . . and the

agreement need not expressly reflect the Union's majority status."). Kravis may have a good policy argument for equating itself with a construction employer given that it hired stagehand employees through a hiring hall arrangement. But the statutory text simply does not extend to non-construction employers. Kravis's attempts to nudge its contracts into the § 8(f) paradigm are thus unavailing.

For those reasons, the Board reasonably concluded that Local 623 was a § 9(a) union and was the exclusive representative of stagehand employees at Dreyfoos Hall.

B

Having upheld the Board's conclusion that Local 623 was a valid § 9(a) union and that Local 623's presumption of majority support therefore continued to apply as of 2000, we next consider Kravis's argument that it rebutted the presumption of majority support. Kravis contends, in particular, that it demonstrated a good-faith reasonable doubt about Local 623's continued majority support, consistent with *Allentown Mack Sales & Serv. v. NLRB*, 522 U.S. 359, 361 (1998).[1] But Kravis provides no evidence to support its alleged doubt about Local 623's continued majority support. *Cf. BPH & Co. v. NLRB*, 333 F.3d 213, 217 (D.C. Cir. 2003) (finding good-faith doubt where employer showed decertification petition signed by majority of bargaining unit);

---

[1] The Board has since modified the *Allentown Mack* standard so that reasonable doubt of a union's majority status is no longer sufficient to justify an employer's unilateral withdrawal of recognition. Now, the Board requires an actual showing that the union no longer has majority support. *See Levitz Furniture Co.*, 333 NLRB 717, 723 (2001). The Board declined, however, to apply the new standard to cases pending prior to the *Levitz* decision and thus did not apply it here. *Id.* at 729.

*see also NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 778 (1990) (requiring "sufficient objective evidence of a good-faith doubt").

To sustain its good-faith doubt argument despite the lack of evidence, Kravis creatively contends that the union never had majority support at the time of the 1992 or 1998 agreements. To the extent Kravis is questioning the union's original majority status, that argument is time-barred by NLRA § 10(b). 29 U.S.C. § 160(b). The case law interpreting Section 10(b) requires that any challenge to the initial majority status of a union be made within six months of recognition by the Board or the employer. *See Local Lodge No. 1424 v. NLRB*, 362 U.S. 411, 423 (1960). The six-month time period for challenging Local 623's alleged lack of majority support in 1992 and 1998 passed long before Kravis first raised this challenge.

To the extent Kravis is raising this point in a circuitous effort to prop up its claim of good-faith doubt about the union's majority support in 2000, it is entirely unavailing. Kravis had the burden to show good-faith doubt as to the union's continued majority support in 2000. Raising a time-barred argument about an alleged lack of majority support in 1992 or 1998 does not alone suffice to meet Kravis's burden to show its doubt about Local 623's lack of majority support in 2000.

In short, the Board reasonably concluded that Kravis "was not privileged to withdraw recognition from Local 623 without demonstrating a good-faith reasonable doubt or uncertainty as to the Union's support among employees. Because [Kravis] failed to meet this burden, the withdrawal of recognition was unlawful." 351 NLRB No. 19, at 2-3 (2007).

C

Kravis argues that, even if it had an obligation to recognize and bargain with Local 623, it did not violate NLRA §§ 8(a)(5) and 8(a)(1) because it did not unilaterally change the scope of the bargaining unit at impasse. Changes in the scope of the bargaining unit may not be implemented unilaterally. *Boise Cascade*, 860 F.2d at 474. In *Boise Cascade*, we defined unit scope as referring to "what employees the unit represents." *Id.* (emphasis omitted). We explained that this was distinct from jurisdiction, which referred to the "type of work." *Id* (emphasis omitted). The parties' dispute over coverage of non-referred stagehands at Dreyfoos Hall plainly related to what employees Local 623 represents. Under our precedent, therefore, the Board reasonably concluded that Kravis acted unlawfully in unilaterally changing the scope of the bargaining unit.

III

Kravis contends that, contrary to the Board's determination, any obligation it otherwise had to bargain with Local 623 ceased upon Local 623's merger with other unions to form Local 500.

In cases involving union mergers or affiliations, the Board traditionally had required an employer to continue bargaining with a union (i) if the union merger or affiliation was conducted by a vote with adequate due process safeguards, and (ii) if the organizational changes were not so dramatic that the post-merger entity lacked substantial continuity with the preexisting entity. *See Sullivan Bros. Printers Inc.*, 317 NLRB 561, 562 (1995).

In the decision in this case, however, the Board expressly overruled its precedent and jettisoned the first factor in light of the Supreme Court's decision in *NLRB v. Financial Institution Employees Local 1182* (*Seattle-First*), 475 U.S. 192 (1986). In *Seattle-First*, the Supreme Court rejected a Board rule requiring that all bargaining unit members be allowed to vote on affiliation. *Id.* at 201-04. The Court reasoned that an employer's obligation to recognize a union may not be discontinued unless the affiliation raises a question concerning representation. *Id.* at 202-03. "In many cases, a majority of employees will continue to support the union despite any changes precipitated by affiliation" and therefore no such question will be raised. *Id.* at 203.

In this case, the Board reasonably concluded that *Seattle-First*'s rationale applied to a merger. As the Board reasonably determined, when there is "substantial continuity" between the pre-merger and post-merger union, the lack of a membership vote on the merger does not cast doubt on employee support for the union because the union is "largely unchanged." 351 NLRB No. 19, at 5 (2007).

Kravis, "as the party seeking . . . displacement, has the burden of proving its claim of discontinuity." *News/Sun Sentinel Co. v. NLRB*, 890 F.2d 430, 432 (D.C. Cir. 1989). Kravis emphasizes various factors – including size differences, reduced participation, different levels of organization, and different numbers of hiring halls – which, in its view, highlight the distinctions between Locals 623 and 500. The Board, however, acknowledged such changes but reasonably explained that countervailing considerations outweighed any differences: There was no substantial change in fee structure. There was no change in the hiring hall system in terms of where the employees would be geographically placed. Employers continued their benefit

contributions to the union's vacation and pension funds. Local 623 officials continued to have leadership roles in Local 500. And representation and resources for the union members were arguably enhanced, rather than diminished, given the former financial straits of Local 623.

Substantial evidence supports the Board's finding that the changes were not "so great that a new organization" came into being. 351 NLRB No. 19, at 6 (quoting *Western Commercial Transp., Inc.*, 288 NLRB 241, 217 (1988)). We therefore uphold the Board's order that Kravis recognize and continue to bargain with Local 500 as the successor to Local 623.

\* \* \*

We deny the petition for review and grant the Board's cross-application for enforcement.

*So ordered.*