# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Decided January 6, 2012

No. 10-1410

SOUTHERN POWER COMPANY,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 11-1003

———

On Petition for Review and Cross-Application for
Enforcement of an Order of the National Labor Relations
Board

———

*Michael D. Kaufman*, *Seth T. Ford*, and *M. Jefferson Starling, III* were on the briefs for petitioner.

*John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, *Robert J. Englehart*, Supervisory Attorney, and *Michael D. Berkheimer*, Attorney, were on the brief for respondent. *Daniel A. Blitz*, Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, TATEL, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

PER CURIAM: Petitioner Southern Power owns the four electricity generating plants involved in this case. Until 2008, Southern Power staffed the four facilities by contracting with Alabama Power at one of the plants and Georgia Power at the three others. Both had exclusive bargaining representatives: the International Brotherhood of Electrical Workers (IBEW) Local 84 represented operation technicians at the Georgia Power–operated plants; IBEW System Council U-19 on behalf of sub-local, Local 801-1, represented the operation technicians at the Alabama Power–operated plant. On January 25, 2008, Southern Power terminated its service agreement with Georgia Power and Alabama Power, taking over the four plants' operations. Local 84 and Local 801-1 requested recognition, contending that Southern Power qualified as a successor employer to Georgia Power and Alabama Power. When Southern Power refused to recognize and bargain with the unions, each filed charges with the National Labor Relations Board (NLRB).

After a hearing, the administrative law judge found that Southern Power violated sections 8(a)(1) and (5) of the National Labor Relations Act (NLRA), ordering it to recognize and bargain with Local 84 and Local 801-1. The ALJ also found that the three-plant bargaining unit represented by Local 84 was inappropriate and therefore ordered Southern Power to bargain with Local 84 in three single-plant units. On March 20, 2009, acting with only two sitting members, the Board issued an order affirming the ALJ's findings "as modified," agreeing that Southern Power was a successor, but finding, contrary to the ALJ, that the Georgia Power three-plant bargaining unit was proper given the unit's group bargaining history. *S. Power Co.*, 353 N.L.R.B. No. 116, 2009 WL 837873, at *2 (Mar. 20, 2009). Southern Power petitioned for review, and we remanded the case to the NLRB in light of *New Process Steel, L.P. v.*

*NLRB*, 130 S. Ct. 2635 (2010), which held that an NLRB panel must have at least three members to exercise the Board's authority. On November 30, 2010, a three-member panel of the Board, after "consider[ing] the [ALJ's] decision and the record," decided to "affirm the [ALJ's] rulings, findings, and conclusions and to adopt the recommended Order to the extent and for the reasons stated" in the March 20 Order, which it incorporated by reference. *S. Power Co.*, 356 N.L.R.B. No. 43, 2010 WL 4929683, at *1 (Nov. 30, 2010).

Southern Power now asks us to vacate the Board's November 30 Order. We lack jurisdiction to consider two of Southern Power's arguments, another is time-barred, and two others fail on the merits. Accordingly, we deny Southern Power's petition for review and grant the Board's cross-application for enforcement.

Southern Power first argues that the speed with which the Board reached its decision and the purportedly confusing language of its order demonstrate that it "arbitrarily rushed to judgment to affirm its improper two-member decision." Pet'r Br. 25. Under NLRA Section 10(e), however, we lack jurisdiction to consider this argument because Southern Power failed to raise it before the Board by filing a motion for reconsideration. *See* 29 U.S.C. § 160(e), (f) ("[n]o objection that has not been urged before the Board . . . shall be considered by the court" absent "extraordinary circumstances"); *Int'l Ladies' Garment Workers' Union v. Quality Mfg. Co.*, 420 U.S. 276, 281 n.3 (1975) (holding that, pursuant to section 160(e), court "may not" consider respondent's objection "that it was denied procedural due process" because respondent failed to raise the objection before the Board by "fil[ing] a petition for reconsideration"). For the same reason, we lack jurisdiction to consider Southern Power's argument that the Order will increase the risk that

Southern Power will violate a settlement agreement between its parent company and the Federal Energy Regulatory Commission.

Next, Southern Power argues that the Board erred in rejecting its argument that Georgia Power and Alabama Power's original recognition of the unions was unlawful. Because nearly ten years have passed since the unions were recognized, NLRA Section 10(b)—requiring any challenges to the initial majority status of a union to be made within six months of its recognition—bars this claim. *See* 29 U.S.C. § 160(b) ("no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board"); *Raymond F. Kravis Ctr. for the Performing Arts, Inc. v. NLRB*, 550 F.3d 1183, 189–90 (D.C. Cir. 2008) (rejecting defense based on the impropriety of union's original majority status because "[t]he six-month time period for challenging Local 623's alleged lack of majority support in 1992 and 1998 passed long before [employer] first raised this challenge").

Southern Power next challenges the Board's successorship finding, arguing that no substantial continuity of enterprise existed between it and either Georgia Power or Alabama Power. Under the NLRA, a successor employer must recognize and bargain with its predecessor's union. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 41 (1987). An employer is a successor where "the majority of its employees were employed by its predecessor" and there is "substantial continuity" between the enterprises. *Id.* at 41, 43. In deciding whether substantial continuity exists, the Board examines

> whether the business of both employers is essentially
> the same; whether the employees of the new

> company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers.

*Id.* at 43. The Board assesses all of these factors "from the perspective of the employees involved." *Cmty. Hosps. of Cent. Cal. v. NLRB*, 335 F.3d 1079, 1083 (D.C. Cir. 2003). The substantial continuity inquiry is fact-based, and we must uphold the Board's factual findings if supported by substantial evidence. *Id.* at 1082–83. That standard is amply satisfied here. Southern Power has stipulated to most of the relevant factors identified by the Supreme Court for evaluating substantial continuity: that former Alabama Power and Georgia Power employees at each of the four plants constituted a majority—indeed, all—of its work force when it assumed operation, and that these employees continued, without hiatus, doing the same job under the same managers with only minor changes to the terms and conditions of their employment.

None of Southern Power's objections undercut the Board's factual findings. First, Southern Power contends that it "did not purchase or acquire stock, assets or equipment of Alabama Power or Georgia Power." Pet'r Br. 38. This is, of course, true: Southern Power acquired no assets because it already owned them. Its relationship to Georgia Power and Alabama Power is thus even closer than that of a new company that purchases its predecessor's assets. Second, Southern Power contends that it "is fundamentally different from Alabama Power and Georgia Power in both size and operation." *Id.* at 40. Yet differences in company size have little impact on continuity within a particular plant and thus on whether the employees "view their job situations as

essentially unaltered." *Fall River*, 482 U.S. at 43. As the Board found, and as the record amply demonstrates, the working conditions in the plants and the circumstances from "the employee's perspective," *id.*, remained virtually identical after Southern Power's takeover. Third, Southern Power contends that the record lacks adequate evidence that the employees expected continued representation because "the employees knew that Southern Power was not unionized." Pet'r Br. 44. But this is of no moment: "The fact that the employees took 'non-union' jobs does not establish that they no longer wanted union representation." *Siemens Bldg. Techs., Inc.*, 345 N.L.R.B. 1108, 1109 (2005). Substantial continuity itself, rather than the successor's union status or the impossibility of procuring a different union job, creates legitimate expectations of continued representation. *See Fall River*, 482 U.S. at 39–40 ("If the employees find themselves in a new enterprise that substantially resembles the old, but without their chosen bargaining representative, they may well feel that their choice of a union is subject to the vagaries of an enterprise's transformation. This feeling is not conducive to industrial peace.").

Finally, Southern Power argues that to the extent we find in the Board's favor, we should deem a single-plant bargaining unit, rather than the three-plant unit the Board approved, "the most appropriate unit" for the plants previously staffed by Georgia Power. Pet'r Br. 44. We, however, owe great deference to the Board's selection of bargaining units, and the Board "need only select *an* appropriate unit, not *the most* appropriate unit." *Dean Transp., Inc. v. NLRB*, 551 F.3d 1055, 1063 (D.C. Cir. 2009) (internal quotation marks omitted). Here, the same collective-bargaining agreement covered employees at all three plants from the time their positions were created. The Board appropriately attached significant weight to this group

bargaining history, and Southern Power presented no "compelling circumstances" to overcome the resulting presumption of appropriateness. *See Cmty. Hosps.*, 335 F.3d at 1085 (internal quotation marks omitted).

For the foregoing reasons, we deny the petition for review and grant the Board's cross-application for enforcement.

*So ordered.*