# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 20-1050**

**September Term, 2024**

FILED ON: FEBRUARY 28, 2025

STEIN, INC.,
                  PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
                  RESPONDENT

---

Consolidated with 20-1051, 20-1053, 20-1078, 20-1083, 20-1091, 20-1097, 20-1098

---

On Petitions for Review and Cross-Applications for Enforcement
of Orders of the National Labor Relations Board

---

Before: PILLARD and KATSAS, *Circuit Judges*.[1]

## **JUDGMENT**

The Court has considered these petitions for review and cross-applications for enforcement on the record from the National Labor Relations Board and on the parties' briefs and oral argument. The Court has accorded the issues full consideration and has determined they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). It is

ORDERED that the petitions for review filed by Stein and the Engineers are GRANTED, the petitions for review filed by the Teamsters and the Laborers are DENIED, and, except as to the evidentiary issue noted herein, the cross-applications for enforcement filed by the NLRB are DENIED.

\*   \*   \*   \*

Two unions charged that an employer and a third union committed various unfair labor practices at an Ohio steel plant. The National Labor Relations Board found there were grounds

---

[1] Senior Judge Silberman was a member of the panel before his death on October 2, 2022. Judges Pillard and Katsas have acted as a quorum in this judgment. *See* 28 U.S.C. § 46(d).

for most of the charged unfair labor practices, but not all. Each of the four parties has sought review of the NLRB's orders, and the Board has filed cross-applications for enforcement. The alleged unfair labor practices all depend on the Board's determination that the plant's three historic bargaining units remained appropriate when the employer began its operations at the plant. We hold that the Board did not adequately explain that determination and so remand to the Board.

I

This case involves slag-processing and scrap-reclamation work at a Middletown, Ohio steel plant. Slag, which is used to build roads, is extracted from molten steel. In turn, scrap metals are extracted from the slag and then recycled.

The owner of the plant contracts out its slag and scrap work. In the past, companies performing this work recognized and bargained with three different unions—locals or affiliates of the International Union of Operating Engineers (Engineers); the International Brotherhood of Teamsters (Teamsters); and the Laborers' International Union of North America (Laborers). The Engineers represented mechanics and operators of heavy equipment. The Teamsters represented drivers. The Laborers represented various less-skilled employees.

In 2017, Stein won a bid to take over the slag and scrap work at the Middletown plant from TMS International, Inc. Stein intended to recognize and bargain only with the Engineers. Stein and the Engineers signed a collective-bargaining agreement purporting to cover all employees performing the slag and scrap work. The agreement required all employees to join the Engineers. In 2018, Stein took over the slag and scrap operations and began applying to all employees its collective-bargaining agreement with the Engineers. Stein began training employees to perform tasks outside their historic jurisdictions.

The Teamsters and Laborers charged Stein and the Engineers with various unfair labor practices. An administrative law judge held that Stein had succeeded to TMS's collective-bargaining obligations, in part because the preexisting bargaining-unit structure remained appropriate when Stein took over the slag and scrap work. *Stein, Inc.*, 369 N.L.R.B. No. 10, at 20-21 (2020).[2] The ALJ therefore held that Stein had committed unfair labor practices by refusing to bargain with the Teamsters and Laborers, by recognizing the Engineers as the exclusive bargaining representative of employees previously represented by the Teamsters and Laborers, and by applying its collective-bargaining agreement to those employees. *See id.* at 26-27. Likewise, the ALJ held that the Engineers had committed unfair labor practices by accepting recognition and assistance from Stein and by entering the new collective-bargaining agreement with it. *See id.* at 27. The Board affirmed the ALJ on those points. *See id.* at 1-2 & 2 n.6.

The Board reversed the ALJ's findings of unfair labor practices predicated on Stein, as a successor employer, unilaterally establishing initial terms and conditions of employment. *See id.* at 3-4. Although the Board affirmed the ALJ's determination that Stein succeeded to TMS's bargaining obligations, it disagreed with the ALJ's conclusion that Stein thereby forfeited its right to set initial terms and conditions of employment as contrary to *NLRB v. Burns International*

---

[2] The ALJ and the Board issued separate decisions on the Teamsters' and Laborers' respective charges. The decisions are identical in all respects relevant here. For concision, we cite to the decisions in the Laborers' case only.

*Security Services., Inc.*, 406 U.S. 272, 294 (1972). *Stein, Inc.*, 369 N.L.R.B. No. 10, at 3. The Board did, however, uphold one of the ALJ's unfair labor practice determinations, albeit on narrower grounds: It concluded that Stein's summary discharge of laborer Ken Karoly was invalid because it depended on Stein's unilateral change to the terms and conditions of the Laborers' employment. *Id*. at 4 (Board); *see id*. at 25-26 (ALJ).

Stein and the Engineers petitioned for review to challenge the unfair-labor-practice determinations. The Teamsters and the Laborers petitioned to re-establish the unfair labor practices found by the ALJ and set aside by the NLRB. The Board filed cross-applications for enforcement. We have jurisdiction under 29 U.S.C. §§ 160(e)-(f).

II

A

Section 7 of the National Labor Relations Act guarantees employees the right "to bargain collectively through representatives of their own choosing." 29 U.S.C. § 157. Section 8(a) prohibits employers from engaging in unfair labor practices, which include interfering with collective bargaining, dominating a union, and refusing to bargain with a union supported by a majority of employees in the relevant bargaining unit. *Id.* § 158(a). Section 8(b) prohibits unions from engaging in unfair labor practices, which include coercing employees in collective bargaining. *Id.* § 158(b).

The allegations against Stein and the Engineers hinge on whether Stein succeeded to collective-bargaining obligations TMS owed to the Teamsters and Laborers. Under NLRB precedent, an employer succeeds to the collective-bargaining obligations of a predecessor if (1) there is a substantial continuity in the relevant operations, (2) a majority of the successor's employees worked for the predecessor, and (3) the historical bargaining units remain appropriate. *Stein*, 369 N.L.R.B. No. 10, at 2 n.6; *see also Burns*, 406 U.S. at 277-81. The parties do not dispute that the first two conditions are satisfied, but they disagree about whether the historic bargaining units remain appropriate.

B

The Board typically applies a "community of interest" test to determine appropriate bargaining units. *See Deferiet Paper Co. v. NLRB*, 235 F.3d 581, 583 (D.C. Cir. 2000); *Trident Seafoods, Inc. v. NLRB*, 101 F.3d 111, 118 & n.11 (D.C. Cir. 1996). This test considers the degree to which employees in a putative unit share a "community of interests distinct from the interests of other employees of the company." *Trident Seafoods*, 101 F.3d at 118 n.11 (cleaned up). Relevant factors include "whether, in relation to other employees, they have different methods of compensation, hours of work, benefits, supervision, training and skills; if their contact with other employees is infrequent; if their work functions are not integrated with those of other employees; and if they have historically been part of a distinct bargaining unit." *Id.* (cleaned up). The Board assesses these factors "from the perspective of the employees involved." *S. Power Co. v. NLRB*, 664 F.3d 946, 950 (D.C. Cir. 2012) (cleaned up).

In the successorship context, the unit determination "is not the same inquiry the Board would conduct when certifying a unit for the first time." *Deferiet Paper Co.*, 235 F.3d at 583; *see Trident*

*Seafoods*, 101 F.3d at 118 & n.11 (in successorship context, the Board need not "apply the traditional community-of-interest test"). By itself, a "mere change of employers or of ownership" should not upset bargaining arrangements that have worked well in the past. *See Burns*, 406 U.S. at 279. The Board thus favors maintaining historically recognized bargaining units, *Trident Seafoods*, 101 F.3d at 114, and it "has long given substantial weight to prior bargaining history," *id.* at 118 (cleaned up). Accordingly, "a group of employees with a significant history of representation by a particular union presumptively constitutes an appropriate bargaining unit." *Int'l Longshore & Warehouse Union v. NLRB*, 890 F.3d 1100, 1111 (D.C. Cir. 2018) (cleaned up). "To rebut that presumption" requires a party challenging the appropriateness of the historical unit to show "compelling circumstances sufficient to overcome the significance of bargaining history." *Everport Terminal Servs., Inc. v. NLRB.*, 47 F.4th 782, 790 (D.C. Cir. 2022) (cleaned up).

Our review of unit determinations is "deferential but not toothless." *Int'l Longshore & Warehouse Union v. NLRB*, 971 F.3d 356, 360 (D.C. Cir. 2020). The Board "need only select *an* appropriate unit, not *the most* appropriate unit." *S. Power Co.*, 664 F.3d at 951 (cleaned up). Moreover, we must accept Board factfinding that is supported by substantial evidence. 29 U.S.C. § 160(e). In determining whether any Board decision was arbitrary, we consider only whether it was "reasonable and reasonably explained." *Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469, 475 (D.C. Cir. 2020) (cleaned up).

## III

Here, the Board did not reasonably explain its conclusion that the historic bargaining units remained appropriate. The ALJ concluded, and the Board agreed, that Stein's cross-jurisdictional employee assignments were "not so regular and widespread as to alter the appropriateness of the three historical units." *Stein*, 369 N.L.R.B. No. 10, at 20-21 (ALJ); *see id.* at 1-2 (Board). In other words, the NLRB concluded that the situation on the ground was not much different after Stein took over the contract than it had been earlier.

The Board's analysis, comparing circumstances before and after Stein took over the contract, was insufficient to support its conclusion that the historic bargaining units remained appropriate. In *Deferiet Paper*, we held that the Board cannot maintain historic bargaining structures based on a "purely comparative inquiry." 235 F.3d at 583. To the contrary, "[e]ven if the successor implements no significant changes," a historic unit may be inappropriate if it "fails to conform reasonably well to other standards of appropriateness." *Id.* at 584 (cleaned up). So, if the TMS units were "only marginally appropriate prior to" Stein's takeover, then even "relatively small changes" in training and cross-assignments could make the units inappropriate. *See id.* And if the TMS units had become inappropriate before Stein took over, then they would remain inappropriate even if Stein made no changes.

In analyzing the prior TMS units, the Board said only that the three-union structure "conformed reasonably well to other standards of appropriateness." *Stein*, 369 N.L.R.B. No. 10, at 2 n.6 (quoting *Deferiet Paper*, 235 F.3d at 584). But an assertion so "conclusory" does not amount to reasoned decision making. *See Am. Clean Power Ass'n v. FERC*, 54 F.4th 722, 727 (D.C. Cir. 2022). The Board did not meaningfully respond to Stein's other arguments that separate units had been inappropriate before Stein took over—such as its claims that members of the three units had job functions that were integrated across their distinct units, regular coordination with

4

one another, and highly similar compensation schemes, work schedules, benefits, and shift supervisors. *See* Stein Br. in Support of Exceptions 58-59.

We do not prejudge whether the historic bargaining units here are appropriate. We hold only that the Board did not reasonably explain its conclusion. And, to simplify any litigation on remand, we address one significant evidentiary ruling challenged here. The Board upheld the ALJ's exclusion of evidence of Stein's cross-jurisdictional training and work assignments after March 2018. *Stein*, 369 N.L.R.B. No. 10, at 2 n.6. We review that evidentiary ruling for abuse of discretion. *Quicken Loans, Inc. v. NLRB*, 830 F.3d 542, 551 (D.C. Cir. 2016). We find none here because changes made after the unions demanded recognition have little relevance to the question whether the existing units remained appropriate when Stein's bargaining obligation allegedly attached. *See*, *e.g.*, *Banknote Corp. of Am.*, 315 N.L.R.B. 1041, 1043 (1994), *enf'd*, 84 F.3d 637 (2d Cir. 1996). We therefore grant that part of the Board's cross-application for enforcement.

III

We grant Stein's and the Engineers' petitions for review and set aside the Board's adjudication of unfair labor practices. We deny the Teamsters' and Laborers' petitions for review, which seek to establish additional unfair labor practices predicated on Stein's status as TMS's statutory successor. We deny the Board's cross-application for enforcement, except as to its evidentiary ruling, and remand for further proceedings consistent with this judgment.

The Clerk is directed to withhold the issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.


**Per Curiam**


FOR THE COURT:
Clifton B. Cislak, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk

5