Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————

Argued April 11, 2003           Decided June 10, 2003

No. 02-1085

NOVA PLUMBING, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

SOUTHERN CALIFORNIA PIPE TRADES DISTRICT COUNCIL NO. 16,
UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE
PLUMBING AND PIPE FITTING INDUSTRY OF THE
UNITED STATES AND CANADA, AFL-CIO,
INTERVENOR

—————

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board

—————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Steven D. Atkinson* argued the cause for petitioner. With him on the briefs were *Thomas A. Lenz* and *Vincent P. Floyd*.

*William M. Bernstein*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Arthur F. Rosenfeld*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *Charles Donnelly*, Senior Attorney.

*Francis J. Martorana* argued the cause for intervenor. With him on the brief was *Dinah S. Leventhal*.

Before: EDWARDS, RANDOLPH and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: In this case involving a construction company's refusal to extend its contract with a labor union, the National Labor Relations Board found the contract governed not by section 8(f) of the National Labor Relations Act, under which a construction-industry employer may refuse to bargain with a union after the expiration of a "pre-hire" agreement, but rather by section 9(a), under which an employer must continue bargaining after a collective bargaining agreement expires. Because the Board relied solely on a contract provision suggesting that the company and the union intended a 9(a) relationship despite strong record evidence that the union may not have enjoyed majority support as required by section 9(a), we hold that the Board failed to protect the employees' section 7 rights "to bargain collectively through representatives of their own choosing." 29 U.S.C. § 157.

## I.

Under sections 9(a) and 8(a)(5) of the National Labor Relations Act, employers are obligated to bargain only with unions that have been "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes." 29 U.S.C. § 159(a); *see also id.* § 158(a)(5) (making it an unfair labor practice to refuse to bargain with a union selected in accor-

dance with section 9(a)). In fact, an employer that signs a collective bargaining agreement recognizing a minority union as the exclusive representative of its employees will generally be deemed to have committed an unfair labor practice by interfering with employee rights under NLRA section 7 "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, . . . to engage in other concerted activities[,] . . . and . . . [generally] to refrain from any or all such activities." 29 U.S.C. § 157; *Int'l Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731, 737 (1961). Even if the employer and union have both acted on a good faith belief of majority status, such agreements are unenforceable because "[t]o countenance such an excuse would place in permissibly careless employer and union hands the power to completely frustrate employee realization of the premise of the Act—that its prohibitions will go far to assure freedom of choice and majority rule in employee selection of representatives." *Garment Workers*, 366 U.S. at 738–39.

NLRA section 8(f) creates a limited exception to this majority support requirement for the construction industry. Under this exception, a contractor may sign a "pre-hire" agreement with a union regardless of how many employees authorized the union's representation. 29 U.S.C. § 158(f). Pre-hire agreements respond to the unique nature of the industry: Construction companies need to draw on a pool of skilled workers and to know their labor costs up front in order to generate accurate bids; union organizing campaigns are complicated by the fact that employees frequently work for multiple companies over short, sporadic periods. *NLRB v. Local Union No. 103*, 434 U.S. 335, 348–49 (1978). To protect employees, however, section 8(f) provides that employees and other parties, including rival unions, may file election petitions to change or decertify a union representative at any time under a pre-hire agreement. 29 U.S.C. § 158(f); *Local Union No. 103*, 434 U.S. at 348–49. By comparison, such petitions are generally barred during the term of a section 9(a) agreement, up to a maximum of three years, because the union is entitled to a conclusive presump-

tion of majority status during that period. *Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 785–86 (1996). Moreover, an employer may refuse to bargain after a section 8(f) agreement expires because the union enjoys no presumption that it ever had majority support. *John Deklewa & Sons*, 282 N.L.R.B. 1375, 1386 (1987). By comparison, an employer must continue bargaining with a section 9(a) union after the expiration of an agreement unless the company can demonstrate either that the union has in fact lost majority support or that the employer has a "good faith uncertainty" as to the union's status. *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 367 (1998); *Auciello Iron Works*, 517 U.S. at 786–87. (Although the Board modified the section 9(a) rule shortly before deciding this case, *Levitz Furniture*, 333 N.L.R.B. No. 105 (Mar. 29, 2001), it did not apply the new standard here.)

In this case, Intervenor Southern California Pipe Trades District Council No. 16 opened negotiations in 1994 with Petitioner Nova Plumbing, Inc., a residential plumbing contractor. Nova President Rodney Robbins had previously worked for his father's company, Calta Plumbing, Inc., and took many of its employees with him to Nova when his father retired and closed Calta. District Council No. 16, which had a collective bargaining agreement with Calta, threatened litigation if Nova refused to bargain with it as well. Nova initially responded by petitioning for a Board election because Robbins believed that many former Calta employees were angry that District Council No. 16 had previously agreed to terms under which they received lower wages and benefits than commercial plumbers. After further negotiation, however, Nova withdrew its petition and agreed to sign a two-year contract. In return, District Council No. 16 agreed to drop its litigation threat, to provide skilled workers, and to attempt to organize Nova's nonunion competitors. The contract incorporated a recognition clause from District Council No. 16's Master Labor Agreement:

> Based upon evidence presented to the Contractor by the Union, which evidence demonstrates that the Union represents an uncoerced majority of the employees of the

> Contractor, and which has been independently verified by a Certified Public Accounting Firm satisfactory to the Contractor, the Contractor hereby recognizes the Unions who are signatory hereto as the sole and exclusive collective bargaining representative of all employees of the contractor performing Plumbing and Piping work as defined in this Agreement.

Despite this language, the record contains no indication that District Council No. 16 ever submitted evidence of employee support to an accounting firm or to Nova directly.

In May 1997, Nova sent a letter to District Council No. 16 stating that the company would not extend the contract past the agreement's June 30 expiration date and that it had no duty to bargain concerning a successor contract. In response, District Council No. 16 claimed section 9(a) status. Although the parties negotiated briefly, Nova eventually stopped bargaining and ended its contributions to the union's pension funds.

District Council No. 16 filed unfair labor practice charges, claiming that Nova had violated NLRA sections 8(a)(1) and 8(a)(5) by refusing to bargain and by making unilateral changes to working conditions after the contract expired. At a hearing before an administrative law judge, Robbins testified that he believed the agreement was a section 8(f) contract which left him free to walk away upon expiration if the arrangement proved disadvantageous. District Council No. 16 representatives had a very different view, testifying that the agreement memorialized a section 9(a) relationship and that Nova therefore had a duty to bargain after it expired. The ALJ assumed *arguendo* that the expired agreement was a section 9(a) contract, but ruled that Nova had acted lawfully in refusing to bargain because it had a good faith uncertainty as to District Council No. 16's majority status in June 1997 and throughout the two-year contract period. *See Allentown Mack Sales & Serv.*, 522 U.S. at 367.

The Board rejected the ALJ's reasoning. Applying standards recently announced in *Staunton Fuel & Material, Inc. d/b/a Central Illinois Construction*, 335 N.L.R.B. No. 59

(Aug. 27, 2001), it concluded that the contract's recognition clause demonstrated that Nova had voluntarily recognized District Council No. 16 as a section 9(a) representative. The Board also rejected the ALJ's finding that Nova had a good faith uncertainty as to District Council No. 16's majority status, concluding that Robbins had acted on stale reports from mid-level supervisors.

Nova now petitions for review, challenging the Board's determinations that the contract was a section 9(a) agreement and that the company lacked good faith uncertainty as to District Council No. 16's majority status. The Board, supported by Intervenor District Council No. 16, cross-petitions for enforcement. We will affirm the Board's order unless its factual findings are unsupported by substantial evidence in the record as a whole or the Board acted arbitrarily or otherwise erred in applying established law to the facts. *Beverly Health & Rehab. Servs., Inc. v. NLRB*, 317 F.3d 316, 320 (D.C. Cir. 2003).

## II.

The Board adopted its current interpretation of section 8(f) in *John Deklewa & Sons*, ruling that in light of prevailing practices in the construction industry as well as of the statute's legislative history, it would presume that all collective bargaining agreements in the industry are 8(f) contracts and therefore require parties asserting the existence of a section 9(a) relationship to prove affirmatively that such a relationship exists. 282 N.L.R.B. at 1385 n.41. Absent a Board-conducted election, the Board required proof of "a union's express demand for, and an employer's voluntary grant of, recognition to the union as bargaining representative based on a contemporaneous showing of union support among a majority of the employees in an appropriate unit." *J&R Tile, Inc.*, 291 N.L.R.B. 1034, 1037 (1988).

In a string of more recent decisions, however, including *Central Illinois*, the Board has ruled that written contract language standing alone may establish the existence of a section 9(a) relationship as long as the contract indicates that

"the employer's recognition [of the union's 9(a) status] was based on the union's showing, or offer to show, substantiation of its majority support." 335 N.L.R.B. No. 59, 2001 WL 1039904, at *4. Relying on *Central Illinois* in this case, the Board concluded that Nova and the union had formed a section 9(a) agreement because the contract's recognition clause "leaves no reasonable doubt that the parties intended a 9(a) relationship." *Nova Plumbing, Inc.*, 336 N.L.R.B. No. 61, 2001 WL 1216968, at *4 (Sept. 30, 2001).

Nova argues that the Board's reliance on contract language alone directly contradicts *International Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731 (1961). In that case the Supreme Court held that a section 9(a) collective bargaining agreement recognizing the Garment Workers' Union as the employees' exclusive bargaining representative "must fail in its entirety" because at the time the agreement was signed, only a minority of plant employees had actually authorized the union to represent their interests. *Id.* at 737. The contract language, the parties' intent to form a binding section 9(a) agreement, and their good faith belief of majority status could not, the Court held, overcome the fact that the union actually lacked majority support. Emphasizing that "[t]here could be no clearer abridgment" of employees' section 7 rights to choose their own representatives or to refrain from collective activity, *id.*, the Court explained:

> We find nothing in the statutory language prescribing scienter as an element of the unfair labor practices here involved. The act made unlawful by § 8(a)(2) is employer support of a minority union. Here that support is an accomplished fact. More need not be shown, for, even if mistakenly, the employees' rights have been invaded. It follows that prohibited conduct cannot be excused by a showing of good faith.

*Id.* at 739.

Nova's argument is well taken. The proposition that contract language standing alone can establish the existence of a section 9(a) relationship runs roughshod over the principles established in *Garment Workers*, for it completely fails to

account for employee rights under sections 7 and 8(f). An agreement between an employer and union is void and unenforceable, *Garment Workers* holds, if it purports to recognize a union that actually lacks majority support as the employees' exclusive representative. While section 8(f) creates a limited exception to this rule for pre-hire agreements in the construction industry, the statute explicitly preserves employee rights to petition for decertification or for a change in bargaining representative under such contracts. 29 U.S.C. § 158(f). The Board's ruling that contract language alone can establish the existence of a section 9(a) relationship—and thus trigger the three-year "contract bar" against election petitions by employees and other parties—creates an opportunity for construction companies and unions to circumvent both section 8(f) protections and *Garment Workers*' holding by colluding at the expense of employees and rival unions. By focusing exclusively on employer and union intent, the Board has neglected its fundamental obligation to protect employee section 7 rights, opening the door to even more egregious violations than the good faith mistake at issue in *Garment Workers*.

Section 8(f) represents a real benefit to both employers and unions in the construction industry, allowing them to establish bargaining relationships without regard to a union's majority status. But the Board cannot, as it did here and in *Central Illinois*, allow this relatively easy-to-establish option to be converted into a section 9(a) agreement that lacks support of a majority of employees. Otherwise the Board would be giving employers and unions "the power to completely frustrate employee realization of the premise of the Act—that its prohibitions will go far to assure freedom of choice and majority rule in employee selection of representatives." *Garment Workers*, 366 U.S. at 738–39.

In reaching this conclusion, we do not mean to suggest that contract language and intent are irrelevant. To the contrary, they are perfectly legitimate *factors* that the Board may consider in determining whether the *Deklewa* presumption has been overcome. *See J&R Tile, Inc.*, 291 N.L.R.B. at 1037 (holding that even where an employer has personal knowl-

edge of majority support, a construction-industry contract will be presumed to be governed by section 8(f) unless the employer and union clearly intended to create a section 9(a) agreement). Standing alone, however, contract language and intent cannot be dispositive at least where, as here, the record contains strong indications that the parties had only a section 8(f) relationship.

Although the administrative law judge did not permit a full showing on actual majority support, uncontradicted testimony indicates that even senior employees who had been longtime union members at Calta opposed the union's representation at Nova. For example, when Robbins first announced to several foremen and senior employees that he had reached an agreement with District Council No. 16, they responded so negatively that Robbins cancelled a meeting to announce the agreement to the rest of the workforce. Robbins then organized a meeting with senior employees and union representatives, but that meeting turned extremely hostile. Nova's field superintendent and other foremen also encountered resistance during the next few months as they informed approximately thirty other employees that they would have to join District Council No. 16.

Moreover, the record contains no evidence of independent verification of employee support. In fact, at the time of the hearing, District Council No. 16 was unable to produce any authorization cards, and even the representative who approached Nova employees at work sites in 1995 testified that he could only remember three people who had signed such cards. Nova itself expressed repeated doubts about District Council No. 16's majority status, both by filing an election petition and later in face-to-face negotiations, and Robbins testified that he did not believe that a majority of employees supported the union when he signed the agreement. Indeed, despite its claim of section 9(a) status after Nova refused to bargain in 1997 and cursory testimony by District Council No. 16's business manager that union negotiators asserted majority status in 1995, neither the union nor the Board appear to have clearly contended that the union had actual majority support in 1995.

This lack of evidence is fatal because the contract itself—which is apparently the sole basis for District Council No. 16's claim to section 9(a) status—states that Nova's recognition of the union rests on "independently verified" proof that the union represents a majority of unit employees. Thus, by neither introducing such proof nor explaining its absence, the Board and union have failed to demonstrate majority representation under the very boilerplate language on which they rely to overcome the *Deklewa* presumption. If the Board considers contract language in determining section 9(a) status, it must take such language seriously when a recognition clause indicates that there is a concrete basis upon which to assess employee support. Otherwise, unions and employers would be free to agree to such self-serving language with no threat of challenge.

The Board cites Third and Tenth Circuit cases upholding Board rulings that contract language alone may establish the existence of a section 9(a) relationship in the construction industry. *See NLRB v. Triple C Maint., Inc.*, 219 F.3d 1147, 1155 (10th Cir. 2000); *Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros., Inc.*, 201 F.3d 231, 242 (3d Cir. 1999). Neither case, however, addresses *Garment Workers*, and neither appears to involve a situation suggesting that the union was not in fact supported by a majority of workers. *See Triple C Maint.*, 219 F.3d at 1155–56 & n.4 (noting that because a majority of employees signed authorization cards during the course of several successive agreements, the employer could not argue that there was no majority support); *Herre Bros.*, 201 F.3d at 242 (noting that the employer had presented "no facts which . . . create a genuine issue of fact" as to the existence of a section 9(a) relationship); *cf. NLRB v. Okla. Installation Co.*, 219 F.3d 1160, 1164–66 (10th Cir. 2000) (concluding that the contract language at issue did not clearly express the parties' intent, without addressing employee support). Moreover, although other circuits have considered contract language in the course of determining whether a particular agreement was governed by section 8(f) or 9(a), they have treated such language as *relevant* to the parties' intent and knowledge but not necessarily determinative of

actual majority status. *See Am. Automated Sprinkler Sys., Inc. v. NLRB*, 163 F.3d 209, 221–22 (4th Cir. 1998); *NLRB v. Triple A Fire Protection, Inc.*, 136 F.3d 727, 735 & n.12 (11th Cir. 1998); *NLRB v. Goodless Elec. Co.*, 124 F.3d 322, 330 (1st Cir. 1997).

Focusing on NLRA section 10(b), 29 U.S.C. § 160(b), which functions as a six-month statute of limitations for unfair labor practice challenges, District Council No. 16 argues that Nova may not dispute that the contract created a section 9(a) relationship because the company failed to raise the issue within six months of the contract's signing. *Triple C Maint.*, 219 F.3d at 1156–59; *Triple A Fire Protection, Inc.*, 136 F.3d at 737; *Casale Indus., Inc.*, 311 N.L.R.B. 951, 953 (1993). We think this argument begs the question, however. The fundamental issue at the heart of this case is whether the 1995 contract was subject to section 8(f) or 9(a); only if the parties formed a section 9(a) relationship in 1995 did Nova commit an unfair labor practice in 1997 and thereby trigger the six-month time limit. *See Brannan Sand & Gravel Co.*, 289 N.L.R.B. 977, 982 (1988) ("Going back to the beginning of the parties' relationship here simply seeks to determine the majority or nonmajority based nature of the current relationship. . . ."); *see also Okla. Installation Co.*, 219 F.3d at 1166 (declining to address section 10(b) where the court concluded that the parties' relationship was governed by section 8(f) rather than section 9(a)); *Am. Automated Sprinkler Sys.*, 163 F.3d at 218 n.6 (concluding that section 10(b) cannot reasonably be interpreted as barring an employer from challenging evidence forming the basis of the Board's complaint). In any event, we need not resolve this issue, for the Board did not rely on section 10(b) and "[w]e cannot sustain agency action on grounds other than those adopted by the agency in the administrative proceedings." *MacMillan Pub. Co. v. NLRB*, 194 F.3d 165, 168 (D.C. Cir. 1999).

We grant the petition for review and deny the cross-petition for enforcement.

*So ordered.*