**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 11-1440

_____

| | | |
|---|---|---|
| National Labor Relations Board, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of a |
| v. | * | Decision of the National |
| | * | Labor Relations Board. |
| American Firestop Solutions, Inc., | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: January 9, 2012
Filed: March 8, 2012

_____

Before MELLOY, ARNOLD, and SHEPHERD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

The National Labor Relations Board has filed a petition with us to enforce its order compelling American Firestop Solutions, Inc., to bargain with the International Association of Heat & Frost Insulators and Allied Workers, Local 74, and to take other remedial action because of its unlawful conduct. *See* 29 U.S.C. § 160(e). We grant the petition.

## I.

AFS is in the business of installing materials in buildings that inhibit fire and contain fires to limited areas of a structure. In 2003, AFS and the Union entered into a collective bargaining agreement, and they entered into additional agreements between 2003 and 2007. From 2003 until August, 2009, AFS contributed to the Union's fringe benefit funds and complied with other terms of the parties' arrangements. In mid-2009, AFS gave notice that it would end its relationship with the Union on August 1; the Union objected, asserting that AFS was required to continue to recognize the Union. After August 1, AFS made no further contributions to the Union funds and began to make unilateral changes to its employees' working conditions.

The Union then filed a charge alleging that AFS had engaged in unfair labor practices in violation of subsections 8(a)(1) and 8(a)(5) of the Act, *see* 29 U.S.C. § 158(a)(1), (a)(5). After a hearing, an administrative law judge held in favor of the Union and ordered AFS, *inter alia*, to bargain with the Union and pay damages; AFS appealed to the Board, which accepted the ALJ's factual findings and legal conclusions, altering only the remedies that the ALJ had fashioned.

## II.

We must accept the Board's factual findings as "conclusive" if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e). "Substantial evidence" is evidence that "a reasonable mind might accept as adequate to support" a finding. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (internal quotation marks and citations omitted); *NLRB v. Whitesell Corp.*, 638 F.3d 883, 890 (8th Cir. 2011).

With respect to legal issues, we have said that we uphold decisions when the Board "correctly applied the law." *See, e.g., Wal-Mart Stores, Inc. v. NLRB*, 400 F.3d

1093, 1097 (8th Cir. 2005). We review *de novo* the Board's contract interpretations that are not based on policy under the Act, *see Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 202 (1991), but we defer to the Board's interpretation of the Act, so long as it is rational and consistent with that law, *NLRB v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 725 (2001); *Pony Express Courier, Corp. v. NLRB*, 981 F.3d 358, 363 (8th Cir. 1992), *cert. denied*, 508 U.S. 950 (1993).

The issue in this case is whether the Union represented the AFS employees under section 9(a) of the Act. Under that section, employers must bargain with unions that have been "designated or selected for the purposes of collective bargaining by the majority of the employees." 29 U.S.C. § 159(a). If an employer enters into a contract with a union that represents its employees under 9(a), the employer generally has a duty to continue to bargain with that union after the contract expires and to maintain the status quo during bargaining. *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 367 (1998). AFS contends, however, that it did not violate the Act because its relationship with the Union is governed instead by section 8(f) of the Act, *see* 29 U.S.C. § 158(f). That provision allows companies and unions in the construction industry to enter into collective bargaining agreements without first establishing that the union has majority support. The parties to an 8(f) agreement have no further obligations after the contract expires, and, while the contract is pending, employees may petition to remove the union as their representative. *See* 29 U.S.C. § 158(f)

Construction contracts are presumed to be 8(f) agreements, *In re John Deklewa & Sons*, 282 NLRB 1375, 1387 n. 53 (1987), but a Union may rebut that presumption by showing "that it made an unequivocal demand for, and that the employer unequivocally granted, majority recognition based on a showing of majority support" of the union employees. *Staunton Fuel & Material, Inc. d/b/a Central Illinois Construction,* 335 NLRB 717, 719-20 (2001). In *Staunton*, the Board, relying on Tenth Circuit cases, concluded that written contract language, standing alone, can

establish 9(a) bargaining status: "A recognition agreement or contract provision will be independently sufficient to establish a union's 9(a) representation status where the language unequivocally indicates that (1) the union requested recognition as the majority or 9(a) representative of the unit employees; (2) the employer recognized the union as the majority or 9(a) bargaining representative; and (3) the employer's recognition was based on the union's having shown, or having offered to show, evidence of its majority support." *Id.* at 720.

Here, the Board based its decision that the Union had 9(a) status primarily on the language of a union-recognition clause in the 2003 agreement:

> Pursuant to [the Union's] claim that it represents an uncoerced majority of the Employer's full-time and regular part-time insulators, Employer has submitted to a "card check" and hereby acknowledges and agrees that a majority of the subject employees have, in fact, authorized [the Union] to represent them in collective bargaining. Therefore, the Employer agrees to recognize and does hereby extend recognition [the Union] [sic], its agents, representatives or successors, as the exclusive bargaining agent for all employees in the bargaining unit described below, as if [the Union] had been certified as exclusive representative pursuant to Section 9(a) of the National Labor Relations Act.

We believe that the union-recognition clause clearly satisfies the *Staunton* criteria. The provision essentially lays out the Union's request for 9(a) recognition by including its "claim that it represents the uncoerced majority" of the workers. And based on that claim, AFS "submitted to a 'card check' " (in which employees check off whether they choose to be represented by the union) and then specifically "acknowledges" that a "majority" of employees authorized the Union to represent them. Finally, AFS states that it recognizes the Union "as if" it "had been certified as exclusive bargaining representative pursuant to 9(a)."

AFS argues that its statement that it would treat the Union "as if" it had been certified as the employees' 9(a) bargaining representative means that the parties assumed that they had not in fact formed such a relationship. The Board interpreted the agreement to mean that, although the Board had not certified the Union following a formal election, the company recognized the Union as a 9(a) representative based on the stated facts. We agree with the Board's interpretation because it is more reasonable under the Act: Although employers are bound by Board-certified election results, they may choose not to recognize a union based on alternative means of proof, such as signed authorization cards. *See Linden Lumber Div. v. NLRB*, 419 U.S. 301, 310 (1974). Therefore, when an employer wants to avoid the complications caused by an election, it may do as AFS did in the recognition clause, *i.e.*, recognize the Union "as if" the Board had "certified" it as the employees' "exclusive representative." Also, if the 2003 contract were not a 9(a) agreement, the parties would have had no need to mention 9(a) at all but could have referred to 8(f) instead. The agreement, however, mentions only 9(a), and the Board has said that such a reference may indicate "that the parties intended to establish a majority rather than an 8(f) relationship." *Staunton*, 335 NLRB at 720.

We also see no error in the Board's determination that the discrepancies in the dates on the parties' copies of agreements did not preclude reliance on the union-recognition clause. As the Board concluded, "no discrepancy" existed "as to the recognition clause" itself: Both parties' copies of the first agreement contained the "dispositive recognition clause" and the parties had agreed "that their bargaining relationship began" on the effective date of that agreement.

After the Board adopted the requirements set out in *Staunton*, the D.C. Circuit held that even if an agreement meets those standards, the parties do not necessarily have a 9(a) relationship. *Nova Plumbing, Inc. v. NLRB*, 330 F.3d 531 (D.C. Cir. 2003). In so doing, the court relied on the Supreme Court's decision in *International Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731 (1961). In that case, the

Court held that the employees' right to the representation of their choice cannot be circumvented by agreements between their employer and a union. "Even if the employer and union have both acted on a good faith belief of majority status, such agreements are unenforceable because '[t]o countenance such an excuse would place in permissibly careless employer and union hands the power to completely frustrate employee realization of the premise of the Act – that its prohibitions will go far to assure freedom of choice and majority rule in employee selection of representatives.'" *Nova Plumbing*, 330 F.3d at 534 (quoting *Garment Workers*, 366 U.S. at 738-39). The D.C. Circuit rejected the Board's reliance on an agreement that met the *Staunton* requirements to find a 9(a) relationship, where other evidence from both parties supported a finding that the union lacked support. It held that "[s]tanding alone ... contract language and intent cannot be dispositive at least where, as here, the record contains strong indications that the parties had only a section 8(f) relationship." *Nova Plumbing*, 330 F.3d at 537.

Here the extra-contract evidence is sparse and, for the most part, does not directly address the degree of employee support for the Union. The Union employee who negotiated the 2003 agreement had died, and the Union offered no union check cards or other evidence that it had majority support. Although Mark Gilchrist, the company president and negotiator in 2003, denied that the union had majority support at that time, the ALJ did not believe him: The ALJ questioned why, if Mr. Gilchrist were telling the truth, he had offered no explanation for having signed a statement to the contrary. The ALJ also remarked that, although Mr. Gilchrist had testified that AFS employees had gradually joined the Union over a period of time until a majority supported the Union, he neither referred to any specific instances nor provided the date when they achieved majority support. The ALJ also noted that Mr. Gilchrist did not explain why the parties made the agreement retroactive to three months before they signed it. The ALJ believed that the parties might well have agreed to work together on the earlier date, but waited to sign the final agreement until the Union obtained the majority support that the contract provision reflected. He noted that

Mr. Gilchrist had testified that soon after he first talked to someone from the Union, he had invited a Union representative to meet with the AFS employees. The ALJ thought, too, that the fact that AFS had followed a pattern over six years of signing agreements with the Union and complying with their provisions supported a finding that AFS believed it had a 9(a) relationship with the Union.

As we have said, the Board accepted all of the ALJ's factual findings. And we see no basis for overturning them because we conclude that they are supported by substantial evidence. *See* 29 U.S.C. § 160(e). Some of the findings are based on the ALJ's credibility assessments, moreover, which we are particularly reluctant to second-guess. *Cintas Corp. v. NLRB*, 589 F.3d 905, 915 (8th Cir. 2009).

We also uphold the Board's conclusion that the parties had a 9(a) agreement. We agree with *Nova Plumbing* that, no matter how clearly a 9(a) agreement may be set out in a contract, all the evidence must be considered. Here the 2003 recognition clause meets the *Staunton* requirements for establishing a 9(a) relationship, and the ALJ's findings based on its credibility determinations provided additional support for its existence. Considering the entire record, we do not believe that the Board's conclusion that the Union had overcome the presumption that the parties had an 8(f) relationship, and had established the existence of its 9(a) status, was an unreasonable interpretation or erroneous application of the Act.

Finally, AFS argues that the Union did not show that AFS acted with animus against the Union. But it has offered no authority for its contention that the charged violations have a state-of-mind requirement and we are aware of none. And it's well-settled that a party may violate the duty to bargain without acting in bad faith. *NLRB v. Katz*, 369 U.S. 736, 742-43 (1962). In addition, AFS's failure to raise this issue in proceedings before the Board precludes us from considering it absent "extraordinary circumstances," 29 U.S.C. § 160(e), which are not present here.

We grant the petition to enforce the order of the National Labor Relations Board.

_____