# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1565
_____

Cargill, Inc.

*Petitioner*

v.

National Labor Relations Board

*Respondent*

_____

No. 16-1930
_____

Cargill, Inc.

*Respondent*

v.

National Labor Relations Board

*Petitioner*

_____

National Labor Relations Board

_____

Submitted: December 15, 2016
Filed: March 24, 2017

_____

Before WOLLMAN and SMITH,[1] Circuit Judges, and WRIGHT,[2] District Judge.

_____

WOLLMAN, Circuit Judge.

Cargill, Inc., petitions for review of an order of the National Labor Relations Board, which concluded that Cargill engaged in an unfair labor practice in violation of sections 8(a)(1) and (5), 29 U.S.C. § 158(a)(1), (5), of the National Labor Relations Act (Act), id. §§ 151-169, when it refused to bargain with the United Food and Commercial Workers International Union, Local No. 324 (the Union). The Board cross-petitions for enforcement of its order. We deny Cargill's petition for review and grant the Board's cross-petition for enforcement.

Cargill processes food-grade oil at its Fullerton plant, which is divided into two distinct areas, which we will call Side A and Side B. On Side A of the plant, eight terminal employees unload and store incoming oil that arrives at the plant by rail car or truck. The terminal employees also deliver samples of the incoming oil to a lab located on the Side A, and the oil is tested by four quality-control employees, who work in the lab. The terminal employees do not leave Side A, but two of the quality-control employees cross to Side B roughly once a week to retrieve paperwork, to escort a rabbi during his inspection of Side B, and to themselves inspect a pipeline that fills shipping containers with oil on Side B. The quality-control employees generally do not interact with the employees who work on Side B. The four employees in the maintenance department also work on Side A. Their primary responsibility is to repair equipment on both sides of the plant and to schedule work

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

[2]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, sitting by designation.

orders, but they do not interact with the employees who work on Side B except as necessary to facilitate repairs.

Side B of the plant is a single building called the packaging warehouse, which is designated for packaging and shipping of processed oil. The twenty-two packaging employees operate machines that adjust the viscosity of processed and unprocessed oil, place empty containers on a conveyor to be filled with unprocessed oil, and transport filled containers by forklift to a storage area for further handling by the shipping employees. After the packaging employees complete their tasks, the nine shipping employees load the packaged oil onto trucks, as well as schedule and monitor trucks arriving at the packaging warehouse to pick up processed and unprocessed oil. Four receiving employees also work in the packaging warehouse, one of whom coordinates the purchase of materials used by packaging employees and three of whom operate forklifts to unload packaging materials and store them in the warehouse. The packaging and receiving employees frequently interact and coordinate to accomplish their work tasks. In addition to sharing a single work location, the packaging, shipping, and receiving employees all have similar wage rates, earn the same benefits, and have a history of common supervision separate from that of employees on Side A. The employees who work in the packaging warehouse typically use the same break room, parking lot, and plant entrance, all of which are separate from those used by employees on Side A.

The Union filed a representation petition with the Board in July 2014, seeking an election to become the bargaining representative of "all full-time and regular part-time packaging, shipping, and receiving employees" at the Fullerton plant. The Union's petition sought to "exclud[e] all other employees, packaging leads, shipping leads, office clerical employees, professional employees, staffing agency employees, guards[,] and supervisors as defined in the [Act]." Packaging and shipping leads were excluded from the petitioned-for bargaining unit on the theory that they were "supervisors" under the Act. Cargill took a contrary position, arguing that the

-3-

packaging and shipping leads were "employees" under the Act, not supervisors, and thus were required to be included in the bargaining unit. Cargill also argued that the maintenance, terminal, and quality-control employees shared a community of interest with the petitioned-for unit and were required to be included for the unit to be appropriate. At a hearing before the Regional Director, the Union stated that it would not proceed to an election if its petitioned-for bargaining unit was altered in any way. The Regional Director issued a decision on September 11, 2014, which held that the packaging and shipping leads were employees, not supervisors, under the Act and that the Union's petitioned-for bargaining unit was inappropriate because it specifically excluded these employees. Because the Union was unwilling to proceed to an election if its petitioned-for bargaining unit was altered, the Regional Director dismissed the Union's representation petition, finding it unnecessary to decide whether any alternate bargaining unit, *i.e.*, one that included the packaging and shipping leads and the maintenance, terminal, and quality-control employees, was appropriate. Neither party requested reconsideration or Board review of the Regional Director's decision.

Less than a week later, the Union filed another representation petition, this time seeking an election to become the bargaining representative of "all full-time and regular part-time packaging, shipping, and receiving employees" at the Fullerton plant. The Union sought to exclude "all other employees, maintenance employees, terminal employees, quality-control employees, staffing-agency employees, office clerical employees, guards[,] and supervisors as defined in the [Act]." Cargill filed a motion to dismiss the petition with prejudice, arguing that the petitioned-for bargaining unit was identical to the unit sought by the Union in the earlier petition and rejected by the Regional Director as inappropriate. Cargill also argued that the new petition should be dismissed because it was an improper attempt to reopen the proceedings in the first representation petition, to seek reconsideration of the Regional Director's decision in those proceedings, and to litigate issues in an untimely or piecemeal fashion. The Regional Director denied Cargill's motion to

dismiss, finding that the bargaining unit petitioned for in the second representation petition was not identical to that petitioned for in the first petition. The Director also rejected Cargill's other arguments.

The Regional Director later issued a decision on the merits of the second representation petition, finding that the petitioned-for bargaining unit was appropriate and reaffirming that the shipping and packaging leads were employees and not supervisors under the Act. Cargill requested Board review of the Director's decision, arguing that the bargaining unit was inappropriate and again asserting that the second representation petition should have been dismissed for the reasons it had previously cited. The Board denied Cargill's request for review, concluding that the company had not raised any substantial issues warranting review.

A secret-ballot election by the approved bargaining unit was held at Cargill's Fullerton plant on December 4, 2014, which resulted in fourteen votes in favor of the Union and fourteen votes against the Union. The ballots cast by three employees were challenged. Cargill also filed five objections to the election, and requested a hearing before the Regional Director. As relevant here, Objection 1 reiterated Cargill's argument that the Union's second representation petition should have been dismissed. Objection 5 alleged that pro-union employees waiting in line to vote "engaged in a loud demonstration just outside the polling room" and that the Board agent overseeing the election did not investigate or stop the conduct. The Regional Director issued a Supplement Decision, summarily overruling Objection 1 as "without merit," noting that Cargill's various arguments for dismissal had been "fully litigated" and that Cargill "raise[d] nothing new that either was not or could not have been previously litigated" earlier in the proceedings. The Director ordered a hearing on Cargill's other objections, including Objection 5.

At the hearing, Cargill's election observer testified about the circumstances surrounding the election, as did two employees who voted in the election. After

considering the evidence and testimony, the Hearing Officer issued a Report recommending that Cargill's objections be overruled and that the three challenged ballots be opened and counted towards the final election result. With respect to Objection 5, the Hearing Officer found that even if the testimony of Cargill's witnesses were credited, the alleged conduct did not warrant setting aside the election results. The Hearing Officer found that there was no evidence that pro-union employees waiting in line outside the polling place attempted to persuade other employees to vote for the Union; that the loud and boisterous conduct lasted only fifteen minutes; that the incidents of booing and chanting were brief, isolated, and directed at a single employee; and that there was no evidence of threats or physical violence. The Hearing Officer concluded that because the complained-of conduct "was not so disruptive or coercive that it substantially impaired the employees' exercise of free choice," overturning the election results was not warranted. Because the underlying employee conduct was not objectionable, it necessarily followed that the Board agent's determination not to investigate or stop that conduct was likewise not objectionable.

Cargill filed exceptions to the Hearing Officer's findings and recommendation regarding Objection 5. The Board adopted the Hearing Officer's findings and recommendations and overruled Objection 5, concluding that the complained-of conduct did "not so substantially impair[] the employees' exercise of free choice as to require that the election be set aside." The Board ordered the Regional Director to open and count the three challenged ballots, which resulted in a revised vote tally of sixteen votes in favor of the Union and fifteen votes against it. The Regional Director then certified the Union as the collective-bargaining representative of a unit of packaging, shipping, and receiving employees at Cargill's Fullerton plant.

Cargill refused to bargain with the Union in order to contest the Union's certification as the collective-bargaining representative, leading the General Counsel to file an unfair-labor-practice complaint with the Board that alleged violations of

sections 8(a)(1) and (5) of the Act. Cargill's answer to the complaint again argued that the Union's second representation petition should have been dismissed. It also argued in general that the election was invalid, that certification of the Union as the bargaining representative was ineffective, and that Cargill had no duty to recognize or bargain with the Union. The Board granted General Counsel's motion for summary judgment, concluding that Cargill's complaints regarding the second representation petition and the conduct of the election either were or should have been raised in the representation proceedings and not in the unfair-labor-practice proceeding. The Board further concluded that Cargill had not offered any newly discovered or previously unavailable evidence or any special circumstances sufficient to justify revisiting any of Cargill's representation or election arguments. The Board ordered Cargill to cease and desist from refusing to recognize and bargain with the Union and from interfering with, restraining, or coercing employees in the exercise of their rights under the Act. It is from that order that Cargill petitions for review.

Cargill first argues that the Board violated its rules and regulations and departed without explanation from its decisional law when it refused to dismiss the Union's second representation petition, which, Cargill asserts, sought a unit identical to the unit sought in the Union's first representation petition. "We review the Board's findings of fact for substantial evidence on the record as a whole, that is, for such relevant evidence as 'a reasonable mind might accept as adequate to support' a finding." Cellular Sales of Mo., LLC v. NLRB, 824 F.3d 772, 775 (8th Cir. 2016) (quoting NLRB v. Am. Firestop Sols., Inc., 673 F.3d 766, 767-68 (8th Cir. 2012)). We review the Board's conclusions of law *de novo*. Id. The Board has broad discretion to establish and implement procedures required to ensure "the free and fair choice of bargaining representatives by employees." Warren Unilube, Inc. v. NLRB, 690 F.3d 969, 974 (8th Cir. 2012) (quoting NLRB v. A.J. Tower Co., 329 U.S. 324, 330 (1946)). We defer to the Board's interpretation of its own rules and regulations, so long as that interpretation is "reasonable and consistent with the Act." NLRB v. Ky. River Cmty. Care, Inc., 532 U.S. 706, 711-12 (2001) ("We find that the Board's

rule . . . is reasonable and consistent with the Act, and we therefore defer to it."); see also Alldata Corp. v. NLRB, 245 F.3d 803, 807 (D.C. Cir. 2001) ("We give controlling weight to the Board's interpretation of its own rule unless it is plainly erroneous or inconsistent with the regulation itself.").

As set forth above, the Regional Director found that the Union's first representation petition inappropriately excluded shipping and packaging leads from the petitioned-for unit. Because the Union was unwilling at that time to proceed with an alternative unit, the Regional Director dismissed the first petition without ruling on the ultimate appropriate-unit issue. The Union was then left to decide whether to further litigate the issue of the shipping and packaging leads in a petition for Board review of the Regional Director's decision or in a motion for reconsideration or rehearing by the Director, or whether to pursue representation of a different unit that included the shipping and packaging leads. The Union elected to pursue the latter course by filing a new petition that sought to represent a different unit—one that did not specifically exclude shipping and packaging leads. By electing to file a new petition, the Union did not, as asserted by Cargill, run afoul of 29 C.F.R. § 102.65(e)(1), which prohibits a motion for reconsideration, rehearing, or reopening of the record on a matter that could have been raised in the earlier proceedings.

Cargill also argues that because the unit proposed in the Union's second petition was identical to the unit proposed in the Union's first representation petition, the Board's refusal to dismiss the second petition allowed the Union to improperly relitigate this issue, reopen the record on the issue, and litigate the issue piecemeal fashion. Although the Union may not have officially abandoned its original position that the shipping and packaging leads were "supervisors" under the Act and not "employees," it did not pursue that position in the second proceeding. The Union did not specifically exclude the shipping and packaging leads from the unit sought in the second petition. Nor did it present any new evidence on the matter in the second proceeding. Indeed, the Union declined to challenge the Regional Director's original

finding regarding the shipping and packaging leads, instead stipulating to the record compiled in the first proceeding and agreeing with Cargill that the Regional Director should "take administrative notice of the record in [the first petition] in determining the appropriateness" of the unit sought in the second petition. As set forth above, the Regional Director considered and rejected Cargill's argument, finding that although the units were "similar," they were not identical because "the petitioned-for unit [in the second representation petition] does not seek to specifically exclude the classifications of 'packaging leads' or 'shipping leads.'" This finding is supported by substantial evidence on the record. See Cellular Sales, 824 F.3d at 775. Moreover, the Board's conclusion that the rules and regulations cited by Cargill were inapposite is "reasonable and consistent with the Act," and is thus entitled to deference. Ky. River Cmty. Care, 532 U.S. at 711-12.

Cargill also contends that the Board's failure to dismiss the second petition violated various provisions set forth in its Casehandling Manual. As Cargill acknowledges, however, the provisions of the Casehandling Manual do "not bind[] this court or the NLRB." Sioux City Foundry Co. v. NLRB, 154 F.3d 832, 838 (8th Cir. 1998).

Cargill has not cited a controlling rule or regulation that required the dismissal of the Union's second representation petition, that prohibited the filing of a second petition, or that required the Union to seek reconsideration or Board review of the dismissal of the first petition in lieu of filing a second petition seeking a different bargaining unit. Accordingly, we reject Cargill's argument that the Board erred in declining to dismiss the second petition.

Cargill next argues that the bargaining unit approved by the Board was inappropriate and that all of the employees at the Fullerton plant should have been included in the unit, given the plant's highly integrated operations. We disagree. The Board is authorized under the Act to determine "the unit appropriate for the purposes

of collective bargaining," 29 U.S.C. § 159(b), and our review of that determination "is limited to . . . whether the decision is arbitrary, capricious, an abuse of discretion, or lacking in substantial evidentiary support," FedEx Freight, Inc. v. NLRB, 816 F.3d 515, 521 (8th Cir. 2016) (quoting NLRB v. St. Clair Die Casting, LLC, 423 F.3d 843, 848 (8th Cir. 2005)). Because our "scope of review is narrow," the Board's "determination as to the appropriateness of a bargaining unit will rarely be disturbed." Id. at 522 (quoting Cedar Valley Corp. v. NLRB, 977 F.2d 1211, 1218 (8th Cir. 1992)). The Board determines whether a unit is appropriate by considering whether the unit is composed of employees who are "readily identifiable as a group (based on job classifications, departments, functions, work locations, skills, or similar factors)" and who "share a community of interest." Specialty Healthcare, 357 N.L.R.B. 934, 945 (2011); see FedEx Freight, 816 F.3d at 522, 525 (adopting Specialty Healthcare framework). A party contesting the Board's determination that a petitioned-for unit of employees meets these criteria must demonstrate that other employees who were excluded from the unit "share an overwhelming community of interest" with those in the petitioned-for unit and that "there is no legitimate basis for excluding" them. FedEx Freight, 816 F.3d at 527 (quoting Specialty Healthcare, 357 N.L.R.B. at 945-46).

The Board reasonably determined that the packaging, shipping, and receiving employees are readily identifiable as a group and share a community of interest. The Board found that these employees work together in the packaging warehouse, which stands apart from the rest of the plant; that they pursue a common goal related to the packaging and shipping of processed oil; and that they share a single supervisor, as well as a history of common supervision. The Board noted that the employees in the petitioned-for unit know each other personally, frequently interact, and share a break room and parking lot. The Board also found that they have similar wage rates and receive the same benefits. The Board's determination that the proposed unit of packaging, shipping, and receiving employees was appropriate was thus not

-10-

"arbitrary, capricious, an abuse of discretion, or lacking in substantial evidentiary support." See FedEx Freight, 816 F.3d at 521.

The Board also reasonably determined that Cargill failed to show that the terminal, quality-control, and maintenance employees, all of whom were excluded from the bargaining unit, shared an "overwhelming community of interest" with the bargaining-unit employees such that their exclusion from the unit rendered it inappropriate. See Specialty Healthcare, 357 N.L.R.B. at 945-46.[3] The Board found that the excluded employees have minimal interaction with the bargaining-unit employees, particularly given that they work on two separate sides of the plant and rarely cross the divide. See FedEx Freight, 816 F.3d at 527 (recognizing significance of "several common sense logical distinctions" that separated petitioned-for unit of employees from excluded employees). Additionally, the Board found that the packaging, shipping, and receiving employees share a common function—the packaging and shipping of processed oil—one that is not shared with the terminal, quality-control, and maintenance employees, whose principal responsibilities involve the unloading and testing of incoming oil and the maintenance of machinery. The Board acknowledged that two quality-control employees periodically cross over to the packaging warehouse, but reasonably found that those employees primarily worked in the separate on-site lab and rarely interacted with employees stationed in the packaging warehouse. A bargaining unit must be "appropriate," but it need "not necessarily [be] *the* single most appropriate unit." Am. Hosp. Ass'n v. NLRB, 499 U.S. 606, 610 (1991); see also FedEx Freight, 816 F.3d at 523 ("If the Board concludes that the petitioned for unit is 'an appropriate unit,' it has fulfilled the requirements of the Act and need not look to alternative units."). Given our narrow scope of review and the deference owed to the Board in the resolution of bargaining-

_____

[3]Cargill also argues that the standard applied by the Board in Specialty Healthcare was a departure from Board precedent. We considered and rejected this argument in FedEx Freight, Inc. v. NLRB, 816 F.3d 515, 523-25 (8th Cir. 2016), *rehearing and rehearing en banc denied* (May 26, 2016).

unit matters, we conclude that the Board did not err in finding that Cargill failed to establish an overwhelming community of interest between the excluded employees and those in the petitioned-for unit such that there was no legitimate basis for their exclusion. We therefore reject Cargill's challenge and decline to disturb the Board's determination that the petitioned-for unit composed of packaging, shipping, and receiving employees was an appropriate collective-bargaining unit.

Finally, Cargill argues that Objection 5 to the conduct of the election should have been sustained and the election results set aside. The Board has broad discretion to establish the "safeguards necessary" to ensure a "fair and free" representation election, A.J. Tower Co., 329 U.S. at 330; see also Warren Unilube, 690 F.3d at 974, and "[t]here is a strong presumption" that such an election "reflects the employees' true desires regarding representation," Deffenbaugh Indus., Inc. v. NLRB, 122 F.3d 582, 586 (8th Cir. 1997). Thus, "[r]epresentation elections are not to be set aside lightly," and the party seeking to overturn election results "carries a heavy burden." Millard Processing Servs., Inc. v. NLRB, 2 F.3d 258, 261 (8th Cir. 1993); see also Warren Unilube, 690 F.3d at 974. To carry that burden, the party challenging the election must "show by specific evidence not only that improprieties occurred, but also that they interfered with employees' exercise of free choice to such an extent that they materially affected the election results." Warren Unilube, 690 F.3d at 974 (quoting Beaird-Poulan Div. v. NLRB, 649 F.2d 589, 592 (8th Cir.1981)). Election results will not be overturned on the basis of objectionable conduct by employees or third parties unless that conduct created "an atmosphere of fear and reprisal such as to render free expression of choice impossible." Millard Processing, 2 F.3d at 261 (citations omitted).

The Board found that, even accepting the testimony of Cargill's witnesses, the company had failed to establish that the complained-of conduct created the necessary atmosphere of fear and reprisal that rendered a free election impossible. Cargill's witnesses testified that during the first ten or fifteen minutes of the voting session

some employees engaged in loud, boisterous conversation and shouted profanities while waiting in line to vote; briefly chanted, "Yes we can," in Spanish;  and booed a coworker known to have voted against the Union.  But "loud outburst[s] in the polling area by nonagent[s of the Union], even involving a partisan message, do[] not rise to the level of objectionable third-party conduct."  SNE Enterps., Inc., 344 N.L.R.B. 673, 681 (2005).  Even the arguably more egregious booing incident was insufficient to establish a general atmosphere of fear and reprisal, as the incident was brief, directed at a single employee, and was not shown to have had an impact on any other employee.  See NLRB v. Hood Furniture Mfg. Co., 941 F.2d 325, 329-30 (5th Cir. 1991) (affirming Board's finding that third-party conduct did not justify setting aside election results even when terminated employees told former coworkers waiting in line to vote that they "kn[e]w damn well the way" they were "supposed to vote").  These findings are supported by substantial evidence.  See Cellular Sales, 824 F.3d at 775.

Cargill argues that the Board improperly relied upon the absence of threats or physical violence in concluding that the complained-of conduct did not create the requisite atmosphere of fear and reprisal.  True, the Board pointed out that the complained-of conduct did not include threats or physical violence, but it did not conclude, or even suggest, that proof of such conduct was necessary in order to establish the general atmosphere of fear and reprisal necessary to overturn election results.  Instead, the Board discussed the allegedly comparable cases involving threats and physical violence and stated, "Contrary to [Cargill's] claims, th[e complained-of] conduct is distinguishable both from the coercive gauntlet that voters were forced to pass in order to vote in Pepsi Cola Bottling Co., 291 N.L.R.B. 578, 579 (1988) . . . , and from the overtly threatening voting-line misconduct in Westwood Horizons Hotel, 270 N.L.R.B. 802 (1984) . . . ."  In sum, the Board did not err in concluding that Cargill failed to carry its heavy burden of showing that the complained-of conduct created a general atmosphere of fear and reprisal rendering a free election impossible.

-13-

In a related argument, Cargill contends that the Board agent's failure to investigate and halt the complained-of employee conduct casts sufficient doubt on the fairness and validity of the election such that the results should be overturned. See NLRB v. Superior of Mo., Inc., 351 F.3d 805, 809 (8th Cir. 2003) (noting that employer must show that Board agent's conduct "tends to destroy confidence in the Board's election process, or . . . could reasonably be interpreted as impugning the election standards" (citations omitted)). Because there was no employee conduct sufficiently objectionable to require action by the Board's agent, the Board did not err in concluding that Cargill failed to establish that the Board agent's conduct cast a reasonable doubt on the Board's neutrality or the integrity of the election.

The petition for review is denied, and the Board's Order is enforced in full.

_____