# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-2848

_____

National Labor Relations Board,

*Petitioner*,

International Union of Operating Engineers, Local 150, AFL-CIO,

*Intervenor*,

v.

Enright Seeding, Inc.,

*Respondent*,

_____

No. 22-2996

_____

Enright Seeding, Inc.,

*Petitioner*,

v.

National Labor Relations Board,

*Respondent*,

International Union of Operating Engineers, Local 150, AFL-CIO,

*Intervenor.*

_____

National Labor Relations Board

_____

Submitted: September 21, 2023
Filed: July 25, 2024

_____

Before COLLOTON,[*] GRASZ, and KOBES, Circuit Judges.

_____

COLLOTON, Circuit Judge.

The National Labor Relations Board applies for enforcement of an order against Enright Seeding, Inc. The order affirmed an administrative law judge's determination that Enright Seeding violated Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a), by failing to furnish information that was requested by a union. Enright Seeding cross-petitions and argues that its relationship with the union had ended before the disputed request for information. We conclude that the Board's order regarding the employer-union relationship is not supported by substantial evidence. We therefore vacate the order and remand for further proceedings.

_____

[*]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

I.

This case involves a dispute under the labor laws. Enright Seeding performs work in the construction industry. In that industry, there are two alternative provisions of the National Labor Relations Act that may govern a collective bargaining agreement. The company and the union in this case disagree about the nature of their agreement.

The general rule is set forth in § 9(a) of the Act, 29 U.S.C. § 159(a). That section requires that a bargaining representative must be selected by a majority of the employees in a bargaining unit. Under § 9(a), "employers must bargain with unions that have been 'designated or selected for the purposes of collective bargaining by the majority of the employees.'" *NLRB v. Am. Firestop Sols., Inc.*, 673 F.3d 766, 768 (8th Cir. 2012) (quoting 29 U.S.C. § 159(a)). An employer "generally has a duty to continue to bargain with that union after the contract expires and to maintain the status quo during bargaining." *Id.*

Section 8(f) creates an exception to the general rule for the construction industry. 29 U.S.C. § 158(f). That provision "allows companies and unions in the construction industry to enter into collective bargaining agreements without first establishing that the union has majority support." *Am. Firestop Sols.*, 673 F.3d at 768. Once the bargaining agreement expires, the parties to an agreement under § 8(f) have no further obligations. *Id.* Section 8(f) addresses the unusual characteristics of the construction industry: "Construction companies need to draw on a pool of skilled workers and to know their labor costs up front in order to generate accurate bids; union organizing campaigns are complicated by the fact that employees frequently work for multiple companies over short, sporadic periods." *Nova Plumbing, Inc. v. NLRB*, 330 F.3d 531, 534 (D.C. Cir. 2003).

Construction contracts are presumed to be § 8(f) agreements. *Am. Firestop Sols.*, 673 F.3d at 768. The presumption may be overcome by an employer's voluntary recognition of the union and a contemporaneous showing of majority support from the relevant employees. *Id.* But even when a contract by its terms provides for a § 9(a) agreement, all evidence must be considered to determine the status of the relationship. *Id.* at 770. The union must actually have majority support to form a § 9(a) relationship. A purported § 9(a) agreement is invalid if majority support was lacking, even if the employer and union both acted on a good faith belief that majority support existed. *Int'l Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731, 737-39 (1961).

The dispute here concerns the nature of an agreement between Enright Seeding and a union, International Union of Operating Engineers, Local 150, AFL-CIO. The company maintains that it reached an agreement with the union under § 8(f), and that its obligations ended when it repudiated the contract. The company asserts that even if the repudiation was untimely, the complaint is time-barred because the union was on notice of the repudiation more than six months before it filed an unfair labor practice charge. The union maintains that the parties established a bargaining agreement under § 9(a) based on majority employee support for the union, and that the company violated the Act by refusing to provide information relevant to the union's performance of its duties.

II.

Enright Seeding provides erosion control work at construction sites and typically operates as a subcontractor in Iowa and Illinois. The company was founded in 2001, and Jamie Enright is the sole owner.

From 2001 to 2007, Enright Seeding had no relationship with a union. In 2007, however, a general contractor asked the company to perform erosion control work.

Because the contractor had signed a collective bargaining agreement with Local 150, Enright Seeding was required to make an agreement with Local 150 to undertake the job.

On July 2, 2007, Enright Seeding and the union signed a bargaining agreement. The contract stated: "The EMPLOYER recognizes the UNION as the sole and exclusive bargaining representative for and on behalf of the employees of the EMPLOYER within the territorial and occupational jurisdiction of the UNION. Prior to recognition, the EMPLOYER was presented and reviewed valid written evidence of the UNION's exclusive designation as bargaining representative by the majority of appropriate bargaining unit employees of EMPLOYER." The agreement provided that it would "continue in effect from year to year" unless notice of termination or amendment were given in writing at least three months before expiration of an associated master agreement between the union and a local builders association.

Mr. Enright also enrolled in Local 150 in his personal capacity as an owner-operator of heavy machinery. Enright Seeding then performed the work for the general contractor as a unionized employer.

In 2011, Mr. Enright withdrew his membership in the union. There was no communication between either Mr. Enright or his company and the union until 2016. In August 2016, Enright Seeding was performing a job with non-union workers when a union representative confronted Mr. Enright about the company's alleged noncompliance with the 2007 bargaining agreement. Mr. Enright told the representative that Enright Seeding no longer had a contract with the union, and declined to meet with union representatives. Enright Seeding maintains that this communication amounted to a repudiation of the 2007 agreement.

In 2017, the union asked the company for certain information about the work that it performed during the previous twenty-four months. The company did not

comply with the union's request, so the union filed an unfair labor practice charge with the Board alleging that Enright Seeding violated the Act by refusing to provide the requested information.

An administrative law judge decided that Enright Seeding and the union had formed a § 9(a) agreement, and that the company thus had continuing obligations under the Act. The judge ruled that by failing to furnish the union with information that it requested about the company's recent work, Enright Seeding violated § 8(a)(1) and (5) of the Act. The judge concluded alternatively that even if the parties formed a § 8(f) agreement, the contract could not have been repudiated during its term, and the company did not give the union clear and unequivocal notice of its repudiation. A three-member panel of the Board affirmed in a divided decision. Because the Board concluded that the parties formed a § 9(a) agreement, the Board did not address the issue of repudiation. The Board now seeks enforcement of its order, and Enright Seeding petitions for review of the order. We will enforce an order of the Board if the order correctly applied the law, and substantial evidence on the record as a whole supports the factual findings. *Dolgencorp, LLC v. NLRB*, 950 F.3d 540, 546 (8th Cir. 2020).

III.

Enright Seeding challenges the Board's decision that the company's bargaining agreement with Local 150 is governed by § 9(a). The company argues that the union has not established that it enjoyed majority support when the contract was formed in 2007.

Relying on its decision in *Staunton Fuel & Material, Inc.*, 335 N.L.R.B. 717 (2001), the Board concluded that "negotiated contract language alone could memorialize that majority support had been properly established, provided that the contract 'unequivocally indicates that (1) the union requested recognition as the

-6-

majority or 9(a) representative of the unit employees; (2) the employer recognized the union as the majority or 9(a) bargaining representative; and (3) the employer's recognition was based on the union's having shown, or having offered to show, evidence of its majority support.'" The Board ruled that the foregoing conditions were satisfied here, that it was "virtually impossible" to evaluate in 2022 whether the union showed or offered to show proof of majority support at the meeting in 2007, and there was no evidence showing that the union's claim of majority status in 2007 was objectively false.

In *American Firestop Solutions*, however, this court expressed agreement with the D.C. Circuit that "no matter how clearly a 9(a) agreement may be set out in a contract, all the evidence must be considered." 673 F.3d at 770. The D.C. Circuit in *Nova Plumbing* explained that reliance on contract language standing alone "runs roughshod over the principles established in *Garment Workers*" and fails to account for employee rights. 330 F.3d at 537-38. Likewise, in *Colorado Fire Sprinkler v. NLRB*, 891 F.3d 1031 (D.C. Cir. 2018), the court explained that the Board's reliance on a "mere offer of evidence in a form contract" to establish a § 9(a) agreement would "reduce the requirement of affirmative employee support to a word game controlled entirely by the union and employer." *Id.* at 1040. Instead, to rebut the presumption of § 8(f) status, the record must include "actual evidence that a majority of employees have thrown their support to the union." *Id.* In *American Firestop Solutions*, we upheld the Board's conclusion that parties formed a § 9(a) agreement where the contract said that the employer had submitted to a "card check" (in which employees check off whether they choose to be represented by the union), and the administrative law judge disbelieved the employer's contrary testimony that the union lacked majority support at the time. 673 F.3d at 769-70.

The record in this case includes only boilerplate contract language that the employer "was presented and reviewed valid written evidence" of the union's majority support. Although the administrative law judge ultimately ruled against

Enright Seeding, the judge found that Enright Seeding never received valid written evidence of the union's exclusive designation as bargaining representative by the majority of appropriate bargaining unit employees. No party excepted to this finding, and the Board adopted it. There is no record evidence, such as authorization cards or votes, to confirm the union's claim of majority support. We therefore conclude that substantial evidence does not support the Board's finding that the 2007 contract between Enright Seeding and the union is governed by § 9(a).

The Board and the union also argue that Enright Seeding cannot dispute that the 2007 contract established a § 9(a) relationship because the company did not raise the issue within six months of signing the contract. The Board adopted that view in reliance on the six-month limitation period in § 10(b) of the Act, 29 U.S.C. § 160(b). Section 10(b), however, provides only that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." A "complaint" is issued by the Board or its agents. Enright Seeding did not issue a complaint or file a charge, and we doubt that § 10(b) restricts the company's ability to defend against a charge. *See Am. Automatic Sprinkler Sys., Inc. v. NLRB*, 163 F.3d 209, 218 n.6 (4th Cir. 1998).

In any event, we agree with the court in *Nova Plumbing* that the Board's position "begs the question," because the issue in this case is whether the 2007 contract was governed by § 8(f) or § 9(a) in the first place. Until that question is resolved, it is not possible to determine whether there was an unfair labor practice that would trigger the time limit of § 10(b) for issuance of a complaint. Accordingly, § 10(b) does not prevent Enright Seeding from litigating the nature of the 2007 agreement in this case. *See Nova Plumbing*, 330 F.3d at 539; *Am. Automatic Sprinkler Sys.*, 163 F.3d at 218 n.6; *but see NLRB v. Triple C Maint., Inc.*, 219 F.3d 1147, 1158-59 (10th Cir. 2000); *NLRB v. Triple A Fire Prot., Inc.*, 136 F.3d 727, 737 (11th Cir. 1998).

For these reasons, we grant Enright Seeding's petition for review, deny the Board's application for enforcement, vacate the Board's decision, and remand for

further proceedings.  We express no view on whether Enright Seeding repudiated the 2007 agreement or whether the union was entitled to the information it requested under an agreement governed by § 8(f).

_____